## JOHN D. GILLETT

### *v.*

## THE BOARD OF SUPERVISORS OF LOGAN COUNTY *et al.*

1. BOARD OF SUPERVISORS—*power to appoint agents for county.* It being the right and duty of the board of supervisors to protect the interests of their county, they have the power to appoint agents to employ counsel and make legal contracts for procuring information and evidence necessary and proper in defense of suits against the county.

2. During the pendency of a proceeding by *mandamus*, to compel a county to subscribe a certain sum to the capital stock of a railroad company, and when the issue of fact to be tried was whether, at a prior election on the question of subscription, a majority of the legal votes cast were in favor of the same, the board of supervisors appointed three of their number a committee, and authorized them to use their discretion in employing such further agents and assistants, in addition to counsel already employed, as to them might seem expedient, for the purpose of defending the interests of the county in trying such question of fact, and preparing necessary evidence therefor: *Held*, that the duties of the committee, although they might include the making of contracts, were merely ministerial, which they might be properly appointed to perform.

3. SAME—*successors to county commissioners' court.* The board of supervisors are the legal successors to the county commissioners' court.

4. CONTRACT—*legality of.* A contract with the county authorities to hunt up and prepare testimony for the county, to be used in a suit against the county, by which the party is to receive $100 for the first ten votes cast at an election, shown to be illegal, $200 for the next ten votes so shown, etc., and the further sum of $1200 in addition to such scale of prices, to be paid only after the courts have decided in favor of the county, is void on account of its corrupt tendency, and as inconsistent with public policy.

APPEAL from the Circuit Court of Logan county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was a bill for an injunction, filed by John D. Gillett against the board of supervisors of Logan county, James C. Hoblit, county clerk, and Christopher C. Burton, Uriah Warren and James Tuttle, a committee appointed by the board of supervisors, to enjoin the issue of an order referred to in the opinion of the court. On the hearing the bill was dismissed, and the complainant appealed.

Messrs. BEASON & BLINN, for the appellant.

Messrs. HAY, GREENE & LITTLER, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It appears from the record in this case that, at the time the bill of complaint was filed, evidence was being taken touching an issue directed by this court in the matter of *The People ex rel. The Pekin, Lincoln and Decatur R. R. Co.* v. *The Board of Supervisors of Logan County;* that the issue involved an inquiry whether an election, held in said county, had been carried by a majority of legal votes, on the declared result of which the railroad company claimed that the county was bound to subscribe and pay for $300,000 of its capital stock.

The board of supervisors of the county had passed a resolution authorizing a committee of three of their own number,

17—67TH ILL.

who had theretofore been appointed for the purpose of employing counsel to defend the interests of the county, to use their discretion in employing such further agents or assistants as might, to them, seem expedient, for the purpose of defending the interests of the county in trying said question of fact and preparing necessary evidence therefor, the committee being empowered to contract with such agents or assistants and reduce the same to writing; and for the purpose of defraying the necessary and contingent expenses, the sum of $5000 was appropriated to the committee.

The bill was filed to enjoin the county clerk from issuing an order for said sum of $5000, and the committee from making contracts under the resolution. On final hearing, the court dismissed the bill.

The first ground relied upon in support of the bill is, that the foregoing resolution was illegal; that the board of supervisors had no right to delegate to a committee such a power as was given by the resolution.

It was the right and duty of the board of supervisors to protect the interests of the county; to that end, the employment of agents was necessary and proper. There was here no delegation to this committee of the discretionary authority of the board, as in *City of East St. Louis* v. *Wehrung,* 50 Ill. 29, where the ordinance delegated to the city treasurer the power to fix the sum to be paid by applicants for a license to sell spirituous liquor, which was held to be unwarranted. But the duties of the committee, although they might include the making of contracts, were merely ministerial, which they might properly be appointed to perform, as recognized in *City of Alton* v. *Mulledy,* 21 Ill. 76; *McClaughry* v. *Hancock County,* 46 ib. 356.

And as we view it, there was the warrant of direct statutory authority for the appointment of this committee by the board. The statute provides that "The county commissioners' court may appoint an agent or agents to make any contract on behalf of such county, for erecting any county building,

or for any other purpose authorized by law. The contracts of such agent or agents, duly executed for and on behalf of such county, shall be valid and effectual to bind such county to all intents and purposes." Scates' Comp. sec. 17, p. 299. The board of supervisors are the legal successors to the county commissioners' court. *Green* v. *Wardwell,* 17 Ill. 278.

A passage from the testimony of James Tuttle, one of the members of the committee, shows the occasion for the resolution:

"Some time in the summer, the committee went to work to get up testimony. We have examined one hundred and fifty to one hundred and seventy-five witnesses; the witnesses are found all over the county; there was a declared majority of two hundred and forty-six votes; the board of supervisors have reason to believe that there were that number of illegal votes cast at that election; we are making the investigation with that belief; we thought the number of agents employed were necessary to get up the testimony; we got the poll books and found men's names who had voted four or five times; we then saw these men, or had some one else do so; these men are scattered all over the county, and it became necessary to have some one to see them; it would be impossible for three men to go all over the county and do this; we never aimed to pay any one more than was reasonable for their services; we supposed we had to have detectives, and they had a hard job of work to do; and in making these contracts, we had to pay such prices as would induce them to work."

The position taken by the appellant involves the absurd consequence that this board of supervisors, composed of nineteen members, should have been kept in constant session during the progress of this protracted investigation, in order that they might, from day to day, as required, make bargains, as a body, for each item of service and expense incurred. It was unnecessary; they might act by a committee appointed, as in the present mode.

The other ground of the bill was, that the money was to be used by the committee as a corruption fund for the suborning of witnesses, and that the contracts made by the committee were against public policy.

Two of the contracts were introduced in evidence. They were essentially alike in their objectionable features, and the one with McNeal is of the following purport:

"That, if he will hunt up testimony and prepare the same, and present it to the proper authorities who may be authorized to receive it, and after said testimony or evidence is fully received and shall be acknowledged as legal, then, for said services, said McNeal is to receive from Logan county the following amounts:

| | | | | |
|---|---|---|---|---|
| For ten illegal votes, so proved | | | | $100 |
| For ten other illegal votes, so proved | | | | 200 |
| " | " | " | " | 300 |
| " | " | " | " | 400 |
| " | " | " | " | 400 |
| " | " | " | " | 400 |

The above mentioned illegal votes must be in place of, answer to or represent certain unknown names on the East and West Lincoln poll books of the election above mentioned. The condition of this obligation is such, that the said McNeal is to pay all his own individual expenses and the expenses of any parties whom he may employ in preparing such testimony and finding such testimony, and finding such witnesses, and that the above amount, or any part of the same, shall not be due or payable until the illegality of such votes is legally proven. It is further agreed that, in case the county of Logan is finally released from any liability to pay said bonds now in dispute between said county and the P., L. and D. R. R. Company, by means of proving the majority in said election to be illegal, the county of Logan further agrees to pay said M. B. McNeal the sum of twelve hundred dollars,

which said amount is to be in addition to the scale of prices above mentioned, and payable only after the courts have decided the case in favor of the said county."

The evidence disproved the actual use, by the committee, of any corrupt means, or any corrupt design, on their part, in the use of the money.

But the contracts, themselves, are pernicious in their nature. They created a powerful pecuniary inducement on the part of the agents so employed, that testimony should be given of certain facts, and that a particular result of the suit should be had. A strong temptation was held out to them to make use of improper means to procure the needful testimony, and to secure the desired result of the suit. The nature of the agreement was such as to encourage attempts to suborn witnesses, to tamper with jurors, and to make use of other "base appliances" in order to secure the necessary results which were to bring to these agents their stipulated compensation.

The tendency of such arrangements must be to taint with corruption the atmosphere of courts, and to pervert the course of justice. A pure administration of justice is of vital public concern. It tends to evil consequences that any such venal agency, as is constituted by these contracts, should have a part in the conduct of judicial proceedings where the attainment of right and justice is the end.

Should contracts of this character receive countenance, we might, among the multiplying forms of agency of the time, have to witness the scandalous spectacle of a class of agents holding themselves out to the public as professional procurers of desired testimony for litigants in court, for pay, contingent upon success in their suits.

In *Marshall* v. *Baltimore and Ohio R. R. Co.* 16 How. 314, it was held that a contract for a contingent compensation, for obtaining legislation, was void by the policy of the law.

·With much greater reason, we think, should the contracts under consideration be held vicious. We can not sanction them. On account of their corrupting tendency, we must hold them to be void, as inconsistent with public policy.

As there is reason to believe that this appropriation of $5000, should it go into the hands of this committee, would be applied by them, to more or less extent, in payment of the compensation provided for by these and similar contracts, we are of opinion the county clerk should have been enjoined from issuing the order to the committee.

We hold that the committee had the power, under the resolution of the board, to make lawful contracts for the purposes designated in the resolution. For whatever claims may have arisen under any employment by the committee, not founded on any illegal contract, the claimants must be left to such remedy as they may have against the county.

We impute no actual or intended wrong to any person concerned. It is this species of contract that receives our condemnation.

The decree of the court below must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*