ALPHONSO GOODRICH

v.

DANIEL K. TENNEY ET AL.

*Attorney and Client—Contract Between—Illegal Contract.*

1.  Fraud vitiates all actions.
2.  Courts will not enforce the execution of an illegal contract, neither will they compel the parties thereto to divide the spoils of their unlawful undertaking, or to pay compensation for services rendered therein.
3.  Contracts to hunt up testimony and prepare the same preparatory for trial are illegal, notwithstanding the fact that they may not contemplate, and that there may be no intention to do otherwise than to ascertain and procure truthful evidence.
4.  The fraudulent obtaining of the original of a contract, or a release of the same, is no defense in a court of law to an action based thereon.

[Opinion filed May 4, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. LOREN C. COLLINS, Judge, presiding.

Appellant filed his bill in the court below setting forth the making of a written agreement between him and one of the appellees, which agreement provided in substance that D. K. Tenney on behalf of appellees should endeavor to get control of all the claims against L. L. Smith, late of Omaha, with power to compromise and settle them at certain rates mentioned in said agreement, and that appellant undertook to furnish the affidavits of L. L. Smith and other parties, of the facts of a sale by said Smith to one Lowy, showing clearly that no consideration was paid by Lowy and that " he knows of Smith's insolvency," to be used on motion for a new trial in the case of Cole v. Miller; and that the testimony of their witnesses, either in person or by deposition, shall be given of like tenor, to be used upon the next trial in any other legal proceedings instituted by said

Tenney against said Lowy, and that for this consideration said appellant should have one-fourth of all money realized upon their claims out of the property transferred by said Smith to Lowy, or in any litigation with said Lowy in respect to the same.

Said appellant in his bill also set forth that prior to the making of said agreement the said L. L. Smith, theretofore doing business at Omaha, Neb., had contracted debts and liabilities amounting to about $275,000, and having on hand at Omaha a large stock of goods and merchandise, transferred the said goods to one Haiman Lowy and absconded to Canada; and that it was claimed by the creditors of said Smith that said transfer was fraudulent and without consideration, and that suits had been instituted, and that said appellees were employed as lawyers for the purpose of setting aside such transfer, and obtaining from said Lowy the proceeds or the value of the goods so transferred to him by said Smith.

Appellant's bill further set forth that in pursuance of said agreement he did obtain the affidavits mentioned and the testimony provided for, and rendered very great assistance to said appellees in the various suits and proceedings by them instituted on behalf of the creditors of said Smith, and that in consequence of his assistance and services in pursuance to said agreement the said D. K. Tenney, as trustee for the creditors of the said Smith, realized from said Lowy more than the sum of $120,000 in cash, one-fourth of which appellant insists, under and by virtue of the terms of said agreement, appellees ought to pay to him, but refused so to do.

Appellant further set forth in his bill that having loaned a considerable sum of money to one Charles Kinsman, he became in the years 1886 and 1887 involved in divers difficulties and suits at law in chancery in the courts of Cook county, growing out of or relating to the affairs of the said Charles Kinsman, and the relation which he, said appellant, sustained to said Kinsman as his creditor, and that in consequence of the intimacy between appellant and the said D.

K. Tenney, brought about by the said agreement and the proceedings thereunder, he employed the said D. K. Tenney, and he, D. K. Tenney, became the principal legal adviser and counselor of him, the appellant, in and about his difficulties and the business growing out of his relations with the said Charles Kinsman, and he, the appellant, paid the said Tenney for his services in respect thereto about the sum of $1,000; and that thereafter, for the purpose of defrauding the appellant, the said D. K. Tenney conspired with the said L. L. Smith to deprive him, appellant, of the benefit of his said agreement with him, the said Tenney, and suggested to him, appellant, that it would be very prejudicial to the interests of the creditors in the suits they were then prosecuting against the said Lowy if it should become known that he, appellant, held such an agreement with him, the said Tenney, and further, that it would be prejudicial to said creditors on account of the prejudice which the judges of said county of Cook were alleged by said Tenney to entertain toward appellant, and that it would be very hurtful to the interests of said creditors if said Tenney should be called as a witness in the suit then pending against said Lowy, and should be compelled to testify to the existence of such an agreement, and that it was therefore best that he, appellant, should surrender said agreement, but that such surrender should make no difference with his, appellant's, rights in the premises; whereupon he, appellant, relying upon the promises and assurances of said Tenney that the surrender should make no difference with the rights of him, the said appellant, did surrender the said agreement to said Tenney; that the said Tenney thereafter, in further pursuance of the said conspiracy to defraud appellant of the benefit of said agreement, caused appellant to be called as a witness in the said suit against the said Lowy, and by an arrangement theretofore made with appellant, caused appellant to falsely assert that he had no such contract and had no interest in said litigation against said Lowy, appellant being persuaded by said Tenney that it was necessary for him, appellant, to so testify in order that a recovery might

be had in said suit against said Lowy, and that thereafter he, the said Tenney, in further pursuance of said conspiracy to defraud appellant of all benefits of the said agreement, by various threats that if appellant did not so do, he, said Tenney, would withdraw as solicitor and counselor for him, the said appellant, from all litigation in which he, the appellant, was engaged, and appellant, fearing that the said Tenney would do so, and fearing that if he did, he, said Tenney, might betray the interests of him, appellant, and the confidence which the appellant had reposed in him, did execute to the appellees and the said D. K. Tenney an instrument, releasing them from all manner of claims, or costs, or costs of action, or debts, sums of money, or accounts whatever, or any sums in equity which he, appellant, might hold against either of the said appellees; that said D. K. Tenney and said appellees having thus fraudulently procured the surrender of said agreement and the executing of a release by him, said appellant, now utterly refuse to carry out their said promises and the understanding upon which said surrender and release were made, and utterly refuse to account to appellant for any portion of the proceeds of the suits instituted and the claims obtained under and in pursuance of said agreement; and insist that he, appellant, has no rights in the premises; that before surrendering said agreement he caused two written copies to be made of the same, which copies he now has; and as he is remediless at law in the premises, he brings his bill, and asks that the release so fraudulently obtained from him by appellees may be canceled and annulled, and that appellees may be required to pay unto him the amount which shall be found due and owing pursuant to the terms of the said agreement to him, and for such other and further relief as the facts of his case may require and may be agreeable to equity.

The demurrer of appellees to said bill was sustained by the court and the bill dismissed, from which order appellant prosecutes this appeal.

Messrs. H. T. & L. Helm, for appellant.

Goodrich v. Tenney.

Mr. WILLIAM E. CHURCH, for appellees.

WATERMAN, J.  This is a most extraordinary bill.  Briefly stated, appellant comes into a court of equity, setting up and asking to have enforced a written agreement, utterly void, and which no court either of law or equity would think of enforcing.  In addition to this he deliberately states that he made a mock surrender of the agreement, for the purpose of enabling one of appellees to falsely testify, if called, that there was no such contract, and that he, appellant, then falsely asserted, when interrogated by the solicitors for the defendant in that case, that he had no such contract and no interest in the litigation concerning which such agreement was.  It may fairly be argued that the agreement did not necessarily contemplate the procuring of anything other than truthful testimony, and that the statement that Goodrich undertook to furnish the affidavits of the facts, means that he was to furnish affidavits of the real facts and not anything similated or of an untruthful nature.  Contracts of this nature are, however, illegal, notwithstanding the fact that they may not contemplate, and that there may be no intention to do otherwise than to ascertain and procure truthful evidence.  The Supreme Court of this State, in Gillett v. Logan Co., 67 Ill. 256, in reference to a contract by one McNeill, " to hunt up testimony and prepare the same and present it to the proper authorities, and receive from Logan County as compensation therefor, for ten illegal votes, $100," etc., said that by such a contract a strong temptation was held out to the parties employed to make use of improper means to procure untrue testimony and secure the desired result of the suit; that the nature of the agreement was such as to encourage the subornation of witnesses, and to make use of other base appliances in order to secure the necessary results which were to bring to the agent his stipulated compensation; and further that the tendency of such agreements must be to taint with corruption the atmosphere of courts and pervert the course of justice; and the contract was, in that case, held to be illegal and

void, notwithstanding the evidence in the case disproved the actual use by the county of any corrupt means or any corrupt design. A similar contract was held void in Patterson v. Donner, 48 Cal. 369.

That courts will not enforce the execution of an illegal contract—that they will neither compel the parties thereto to divide the spoils of their unlawful undertaking, or to pay compensation for services rendered therein—is well settled. Neustadt v. Hall, 58 Ill. 172; Liness v. Hesing, 44 Ill. 113; Arter v. Byington, 44 Ill. 468; Skeels v. Phillips, 54 Ill. 309; Cummings v. Foss, 37 Ill. 523; Broom's Legal Max. 732; Collins v. Blantin, 2 Wils. 341.

Counsel for appellant have called our attention to the case of McBlair v. Gibbs, 17 How. 335, as well as others, insisting that under the authority of these cases, the proceeds of the illegal undertaking being now in the hands of one of the parties to the unlawful agreement, such party will be required to divide the proceeds according to the original compact; that is, we understand appellants to insist that the bill in this case is not for an execution of the original agreement but merely for an awarding of a division of the spoils that have arisen therefrom. Doubtless there may be found cases—perhaps some of those cited by appellant do trench upon the rule that courts will leave the parties to an illegal transaction in the situation in which they have voluntarily placed themselves, yet we think it will be found that in all these cases an attempt has been made to discriminate between the enforcement of claims growing immediately out of the illegal contract and the maintenance of obligations resting upon independent and valid considerations. Such was the case of the assignment held valid in McBlair v. Gibbs, *supra*. The court in that case said: " The transaction out of which the assignment to Oliver arose, was unaffected with any illegality. The consideration paid was not only legal, but meritorious." Wilson v. Owen, 30 Mich. 474, is clearly distinguishable from the case at bar; the opinion in that case points out the distinction between Bronson Agricultural Association v. Ramsdell, 24

Goodrich v. Tenney.

Mich. 441, in which the court refused to sustain an attempt to collect money earned in an illegal enterprise, and the case then under consideration.

Tracy v. Talmage, 14 N. Y. 162, is merely to the effect that when the parties to a contract *malum prohibitum* only, are not in *pari delicto* as well as *particeps criminis*, the courts, although the contract be illegal, will afford relief, when equity requires it, to the more innocent party; and the court, in respect to the two classes of cases in which relief will be afforded to the parties to an illegal contract says, page 181: "It is essential in both classes that the contract be merely *malum prohibitum*. If *malum in se*, the courts will in no case interfere to relieve either party from any of its consequences." Curtis v. Leavitt, 15 N. Y. 9, is so unlike the case at bar and the judgment given so different from anything alleged or sought by appellant that it can not well be considered an authority applicable to the present litigation. What is said by Selden, J., on page 285 of the voluminous discussion, occupying 250 pages, is worthy of notice, viz.: "If both parties be in *pari delicto*, no relief will be granted, but they will be left remediless; their contract will not be set aside, and any money which may have been advanced can not be recovered. Nor do we find anything in the cases cited in note 2, Sec. 403, Pomeroy's Eq. Juris., to which counsel have also called our attention, which militates against the well recognized rule in respect to illegal contracts, that where the agreement is *malum in se*, or the parties are in *pari delicto* and *particeps criminis*, the court will not afford them any relief. In the present case, according to the allegations of the bill, the contract was *malum in se*, the parties are in *pari delicto* and *particeps criminis*. Appellant alleges that he has performed and asks that the court compel the other party to fulfill his part.

We do not see, if appellant has any rights, what necessity there was for him to apply to a court of equity. He does not seem to be ignorant of the amount of money realized by appellees or to have any difficulty in establishing the same. He is in possession of what he declares is a true copy of the

agreement he made.    He insists that it is in full force, and that the only obstacle to its enforcement is the fact that he was fraudulently induced to surrender the original and executed a release of the same.   Fraud vitiates all actions, and there is no reason shown why, if appellant has a good cause of action for the money received under and in pursuance of this contract, he should not have gone into a court of law and recovered the same.    Certainly the fraudulent obtaining of the original of a contract or a release of the same, is no defense in a court of law to an action based thereon.

It would seem also that in a bill of this nature some reason ought to be given to a court of equity for appellant's long neglect to sooner prosecute his claim.   It appears from the bill that appellees received the money sought to be recovered about the 6th of December, 1888, of which reception appellant seems to have been then informed; yet he neglected to file his bill until August 20, 1891.   From other allegations in the bill it would appear that the assertion which appellant says he falsely made in the said litigation against said Lowy, was made more than three years prior to the filing of his bill. Whether the time at which appellant, in response to the interrogations of Lowy's solicitors, made his false statement, had anything to do with the period at which he filed his bill, can only be conjectured.   The bill is in effect simply a bold and bare attempt to induce a court of equity to enforce an illegal and void agreement, and the demurrer to it was properly sustained.

                                        *Judgment affirmed.*