FIRST NATIONAL BANK OF SPRINGFIELD, Guardian of the Estate of Christy L. Mollet, a Minor, *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. MALPRACTICE RESEARCH, INC., d/b/a The Medical Quality Foundations, *et al.*, Defendants-Appellants and Cross-Appellees.

Fifth District   No. 5—95—0701

Opinion filed December 19, 1996.—Rehearing denied January 15, 1997.

Raymond E. McPhail, of Bullington, White, McPhail & Jarman, P.C., of Hillsboro, and Deborah A. Vitale, of Alexandria, Virginia, for appellants.

Paul Brown and Emmet A. Fairfield, both of Brown, Hay & Stephens, of Springfield, for appellees.

JUSTICE WELCH delivered the opinion of the court:

The question presented in this appeal from a summary judgment entered in a declaratory judgment action is simply whether a contract entered into between plaintiffs, First National Bank of Springfield, guardian of the estate of Christy L. Mollet, a minor, and Janice L. Mollet and Michael Mollet, and defendants, Malpractice Research, Inc., d/b/a The Medical Quality Foundation, and H. Barry Jacobs, M.D., is void as contrary to the public policy of the State of Illinois. The circuit court of Montgomery County so found, and defendants appeal.

Plaintiffs herein were also plaintiffs in a medical malpractice suit brought to recover damages for birth injuries to the minor, Christy L. Mollet. Through their attorney, Douglas Marti, plaintiffs entered into a contract with defendants herein, a medical/legal consulting firm and its medical director, to provide technical assistance for the

education of counsel, to endeavor to obtain expert witnesses, and to assist in marshalling evidence in support of the medical malpractice claim.

The contract provides that its purpose is to help defray the plaintiffs' cost of litigation and that defendants will make their expertise available to plaintiffs' attorney and will make expert witness reports and expert witnesses on its consulting staff available to plaintiffs. Dr. Jacobs was to be available at any time for plaintiffs' attorney to answer questions or assist in depositions or at trial. The contract further provides that defendants shall attempt to locate expert medical witnesses but that defendants cannot guarantee the wording or substance of reports, or the quality, nature, or admissibility of the experts' testimony, or the credentials of the experts.

There was to be a charge of $150 for each expert witness report and a charge of $500 per day for the testimony of any expert witness. A fee of $75 per hour was to be paid for depositions of expert witnesses. These fees were payable in advance. Plaintiffs were free to also find their own expert witnesses outside the contract without any effect on the contract.

In addition to the expert witness fees mentioned above, plaintiffs were to pay to defendants a contingent fee of 20% of any amounts recovered in the medical malpractice action. The sum of $10,000 is set forth as liquidated damages in the event the contingent fee is not paid.

Because the injured plaintiff was a minor, defendants asked plaintiffs to seek and obtain court approval of the contract prior to defendants expending any effort pursuant thereto. Plaintiffs petitioned for court approval of the contract, representing to the court that they "have insufficient financial resources with which to properly prepare their case without entering into the attached contract." The petition also informed the court that the contract provides for a 20% contingent fee to defendants in the event of any recovery in the medical malpractice action. The contract was approved by the circuit court of Montgomery County on January 3, 1986.

It appears from the record that defendants did provide some services to plaintiffs in the medical malpractice action and did locate several expert witnesses who were willing to testify. It appears that two of these witnesses were deposed. However, it also appears that plaintiffs' original attorney, Douglas Marti, who had negotiated the contract between plaintiffs and defendants, withdrew from the medical malpractice action and was replaced with attorney M. John Hefner, Jr. Hefner did not utilize the services of defendants, although

defendants notified Hefner that they were willing and able to assist in the medical malpractice action. Hefner negotiated a $500,000 settlement of the medical malpractice action. He then brought this declaratory judgment action seeking to have the contract between plaintiffs and defendants declared void as contrary to the public policy of the State of Illinois. He succeeded. Defendants appeal.

■ It is well settled that courts will not enforce a private agreement that is contrary to public policy. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989). The public policy of this state is reflected in its constitution, its statutes, and its judicial decisions. *O'Hara*, 127 Ill. 2d at 341. Whether or not a contract is contrary to public policy depends on the peculiar facts and circumstances of each case. *O'Hara*, 127 Ill. 2d at 341-42. In deciding whether a contract that is not otherwise prohibited by law violates public policy, the courts must determine whether the agreement is so capable of producing harm that its enforcement would be contrary to the public interest. *O'Hara*, 127 Ill. 2d at 342. A court will not declare a contract illegal unless it expressly contravenes the law or a known public policy of this state, as public policy strongly favors freedom to contract. *Rome v. Upton*, 271 Ill. App. 3d 517, 520 (1995). The question of whether a contract is enforceable under considerations of public policy is one of law. *Rome*, 271 Ill. App. 3d at 520.

Let us make clear what the contract is not before we proceed with our discussion of its legality. The contract is clearly not one to pay a contingent fee to expert *witnesses*. This clearly would be prohibited by Rule 3.3(a)(15) of the Illinois Rules of Professional Conduct. 134 Ill. 2d R. 3.3(a)(15). Only the medical/legal consulting firm is to receive a contingent fee. Expert witnesses are to be paid an hourly or flat fee for their professional services. Nor is the contract one involving the sharing of legal fees between the plaintiffs' attorney and defendants, which would be prohibited by Rule 5.4(a) of the Illinois Rules of Professional Conduct. 134 Ill. 2d R. 5.4(a). There is no provision in the contract that the defendants' 20% contingent fee is to come out of the fee of plaintiffs' attorney. Instead, defendants' fee is to come out of plaintiffs' award. Furthermore, the contract does not guarantee that defendants will be able to find any expert witnesses to testify in support of plaintiffs' claim or the content or substance of any expert testimony.

Plaintiffs argue that the public policy of this state is enunciated in two ancient cases decided by our supreme court in 1873 and 1893. In *Gillett v. Board of Supervisors*, 67 Ill. 256 (1873), the county entered into a contract with an individual whereby the individual was to "hunt up testimony" to be used to prove voter fraud in a

county election. The "witness finder" was to receive $100 for the first 10 votes proved to be illegal, $200 for the next 10 votes proved to be illegal, etc., and the further sum of $1,200 if the case was decided in favor of the county. Our supreme court held that this contract was void as contrary to public policy, stating:

"But the contracts, themselves, are pernicious in their nature. They created a powerful pecuniary inducement on the part of the agents so employed, that testimony should be given of certain facts, and that a particular result of the suit should be had. A strong temptation was held out to them to make use of improper means to procure the needful testimony, and to secure the desired result of the suit. The nature of the agreement was to encourage attempts to suborn witnesses, to tamper with jurors, and to make use of other 'base appliances' in order to secure the necessary results which were to bring to these agents their stipulated compensation." *Gillett*, 67 Ill. at 261.

In *Goodrich v. Tenney*, 144 Ill. 422 (1893), Goodrich and Tenney, an attorney, entered into an agreement whereby Goodrich was to receive 25% of any amount collected by Tenney in a lawsuit to invalidate the transfer of a debtor's property. Goodrich was to produce affidavits and witnesses testifying that no consideration had been given for the property and that the purchasers knew of the debtor's insolvency at the time of the transfer. Relying on *Gillett*, our supreme court held the contract void as contrary to public policy. The court found that the tendency of such contracts to the perversion of justice through subornation of perjury renders them illegal.

█ We cannot agree with plaintiffs that these cases represent the public policy of the State of Illinois with respect to the contract in the case at bar. We think that they are inapposite to the case at bar for several reasons. First, the witnesses sought to be procured in *Gillett* and *Goodrich* were fact witnesses, while the witnesses to be procured by defendants in the case at bar are expert opinion witnesses. Secondly, the witnesses sought to be procured in *Gillett* and *Goodrich* were to testify to certain express and specified facts. In the case at bar, defendants have not agreed to find witnesses to testify to any particular facts or opinions. Indeed, the contract explicitly states that defendants cannot guarantee the wording or substance of reports or the nature of the experts' testimony. Finally, in *Gillett* and *Goodrich*, the witness finders did not get paid under the contract unless they found witnesses to testify to the specified facts. In the case at bar, defendants are entitled to their contingent fee whether or not they are able to procure expert witnesses for plaintiffs, provided that plaintiffs prevail in their medical malpractice action. The contract in

the case at bar does not require that defendants procure any expert witnesses. It requires only that defendants "attempt to locate expert witnesses." Defendants provide other services under the contract for which they are apparently entitled to receive their contingent fee even if they are unsuccessful in locating expert witnesses.

We find that there are substantial differences between the contracts in the *Gillett* and *Goodrich* cases and the contract in the case at bar. We do not believe that *Gillett* and *Goodrich* express a public policy against contracts such as the one at bar. As we have stated, whether or not a contract is contrary to public policy depends on the peculiar facts and circumstances of each case. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341-42 (1989).

■ Plaintiffs also argue that a 1991 advisory opinion of the Illinois State Bar Association enunciates a public policy against contracts such as the one at bar. In that advisory opinion, the bar association states its opinion that it is professionally improper for an attorney to hire, or to recommend or acquiesce in his client hiring, an agency to provide an expert witness where the agency's compensation is contingent upon the outcome of the matter. ISBA Op. No. 86—3 (July 7, 1986). We think it clear that the Illinois State Bar Association does not express the public policy of the State of Illinois. As we have stated, the public policy of this state is to be found in its constitution, statutes, and judicial decisions. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989).

Plaintiffs direct us to no other sources of expression of public policy with respect to contracts such as the one at bar, and we are unable to find any. Accordingly, we must determine whether the contract is so capable of producing harm that its enforcement would be contrary to the public interest. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 342 (1989).

■ We do not see any overwhelming danger of subornation of perjury in the contract. The witnesses sought to be procured are expert opinion witnesses as opposed to fact witnesses. Defendants are not obligated to find witnesses to testify to any specific facts or opinions. Furthermore, defendants receive their contingent fee whether or not witnesses are found, if plaintiffs are successful in their medical malpractice action. The temptation for subornation of perjury which was present in *Gillett* and *Goodrich* does not appear to be present in the case at bar. While defendants have an interest in seeing that plaintiffs prevail in the medical malpractice action, defendants can influence the result in ways other than suborning perjury. Under the contract, the defendants are obligated to assist plaintiffs in numerous ways other than the procurement of expert

witnesses. We conclude that the contract does not create a real and substantial danger of subornation of perjury such that its enforcement would be contrary to the public interest.

We are also mindful that the contract takes another slice out of plaintiffs' pie in that, in addition to the contingent fee payable to plaintiffs' attorney, a contingent fee is payable to defendants under the contract. However, we are also mindful that, without the services provided by defendants, many medical malpractice cases, including plaintiffs', might not make it past the courthouse door. Medical malpractice cases are becoming increasingly complex, and even experienced attorneys may not have sufficient knowledge or resources to properly prepare a medical malpractice case without expert assistance. Even experienced malpractice attorneys cannot understand all the complex matters involved in some medical malpractice cases. Furthermore, there is a recognized scarcity of expert medical witnesses who are willing and able to testify against their colleagues in the medical field. The task of locating an expert witness to testify against another physician in a medical malpractice case is well known to be an expensive, time-consuming, and often unsuccessful task, which plaintiffs or their attorneys must undertake in a medical malpractice case. The services provided by medical/legal consulting firms in explaining complex medical matters, assisting in the preparation of questions for witnesses and parties, developing the case, and finding appropriate expert witnesses may be invaluable in certain cases. Finally, many medical malpractice plaintiffs are simply financially unable to pay for their attorney's services on anything other than a contingent fee basis, much less pay for the services provided by medical/legal consulting firms on anything other than a contingent fee basis. Indeed, plaintiffs in the case at bar admitted in their petition for approval of the contract that they had insufficient financial resources with which to properly prepare their case without entering into the contract with defendants. Not all attorneys and law firms can afford to advance such costs to their clients.

We conclude that medical/legal consulting firms such as defendants can provide a legitimate and valuable service to those injured through medical malpractice, but that many cannot afford such services except through a contingent fee contract. We do not find that the contract between plaintiffs and defendants is so capable of producing harm that its enforcement would be contrary to the public interest. Accordingly, we find that the contract in the case at bar is not violative of the public policy of this State and is legal and enforceable.

■ We return now to the facts of this case. After finding that the

contract was void and unenforceable, the trial court entered summary judgment for plaintiffs on count I of defendants' counterclaim. This counterclaim had sought enforcement of the contract and the sums due thereunder. We reverse that summary judgment and enter summary judgment against plaintiffs and for defendants in the amount of $100,000, representing 20% of plaintiffs' $500,000 recovery. That provision of the contract providing for additional liquidated damages in the amount of $10,000 should the contingent fee not be timely paid is unenforceable pursuant to *Telenois, Inc. v. Village of Schaumburg*, 256 Ill. App. 3d 897, 902 (1993). Further, pursuant to the power granted us by Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we hereby enter judgment in favor of defendants and against plaintiffs on all counts of the declaratory judgment action brought by plaintiffs.

The trial court also entered judgment for defendants and against plaintiffs on count II of the defendants' counterclaim, which sought recovery in *quantum meruit* for the services provided by defendants. In light of our disposition with respect to count I of the counterclaim, we hereby vacate the judgment of the circuit court on count II of the counterclaim.

■ Finally, in their briefs, defendants argue that the trial court erred in denying their special and limited appearance for the purpose of contesting the jurisdiction of the court. In their oral argument before this court, defendants conceded that they had waived any error in the denial of their special and limited appearance by participating in the proceedings before the trial court. Accordingly, we will not discuss this issue.

For the foregoing reasons, judgment is hereby entered in favor of defendants and against plaintiffs on all counts of plaintiffs' complaint for declaratory judgment. The summary judgment of the circuit court of Montgomery County in favor of plaintiffs and against defendants on count I of defendants' counterclaim is hereby reversed, and judgment is hereby entered thereon against plaintiffs and in favor of defendants in the amount of $100,000 plus costs of suit. The judgment entered by the circuit court of Montgomery County in favor of plaintiffs and against defendants on count II of defendants' counterclaim is hereby vacated.

Reversed in part; vacated in part and judgment entered.

RARICK and MAAG, JJ., concur.