WILLSON *v*. OWEN.

## Robert C. Willson v. William A. Owen and others.

*Associates : Partners : Question of fact : Verdict : Remedy at law.* In an action brought by parties who had united in getting up a horse fair association, against one who had acted as treasurer, to recover the funds received by him, it was objected that, the defendant being one of the associates, an action at law would not lie against him, and that an accounting in equity as between partners was the only appropriate remedy :—

*Held,* That the evidence being conflicting upon the question whether defendant was associated with the plaintiffs as a partner in the venture, the verdict of the jury, to whom it was fairly submitted as a question of fact, finding in legal effect that he was not, is a conclusive answer to the objection :—GRAVES, CH. J., dissenting and holding that the evidence clearly established that defendant was one of the associates, and that there was none tending to show the contrary.

*Joint stock associations : Members : Moneys received : Implied promise : Declaration : Assignment : Original promise.* The implied promise of one holding moneys for a joint stock association in which the interests of the members are represented by certificates transferable at will, must be understood to be, to make payment to those who are associates when suit is brought; and where one of the plaintiffs, who is a member at the time of bringing suit, holds by assignment from one of the original associates, it is not necessary that the declaration should mention such assignment, but it may count as upon an original promise to all the plaintiffs.

*Horse fairs : Moneys had and received : Illegal contracts : Recovery.* The fact that the moneys sought to be recovered were received by the defendant in the prosecution of an unlawful undertaking, is no defense to an action to recover the same by those for whose use the moneys were received by him; such a recovery does not involve the enforcement of any illegal contract.

*Heard October 9. Decided October 30.*

Error to Wayne Circuit.

This was an action for moneys had and received, brought by defendants in error, who had united in getting up a horse fair association, against plaintiff in error, who had acted as treasurer of the association, to recover moneys received by him as stock subscriptions, entrance and admission fees, and commissions on pools sold. Plaintiffs recovered, and defendant brought error.

*Moore & Griffin,* for plaintiff in error.

*A. G. Comstock* and *F. A. Baker,* for defendants in error.

COOLEY, J.

The question whether Willson was associated with the plaintiffs below as a partner in the venture was one on which the evidence was conflicting, and was fairly submitted to the jury, who have found he was not. This disposes of the objection that suit will not lie against him at law. If he was not one of the associates, it was not a case for a suit in equity for an accounting.

The objection that the action cannot be maintained because Wreford, one of the original associates, had transferred his interest to the plaintiff Simmons, and the declaration says nothing of the assignment, but proceeds as upon an original promise to all the plaintiffs, we also think cannot be maintained. The plaintiffs had formed themselves into a joint stock association, the interests of the members being represented by certificates which were transferable at will; and the implied promise of one holding moneys for such an association must be understood to be, to make payment to those who are associates when suit is brought.

We also think the court below decided correctly in over-ruling the objection to the action on the ground that the moneys demanded were received in the prosecution of an unlawful undertaking. It is true that the trials of speed for money at the horse fair, and the selling of pools under the auspices of the association, were illegal; but there is no illegality in the promise, express or implied, of the defendant, to pay over to the plaintiffs the moneys received for them from whatever source derived, or from whatever transactions springing. In *Bronson Agricultural, etc., Association v. Ramsdell, 24 Mich., 441*, the attempt was made to enforce the illegal contract by a suit to recover the moneys promised by it; but this suit involves no such attempt. The illegality of this association only appears incidentally in explaining whence the moneys were received; but the ground of recovery is that the moneys were received for the plaintiffs, and it is not material how or on what account

they came to his hands, if in fact for the plaintiffs' use. The distinction between such a case and one in which the suit seeks the enforcement of the illegal contract is well pointed out by *Mr. Justice Nelson* in *McBlair v. Gibbes, 17 How., 235, 239,* where *Tenant v. Elliott, 1 B. & P., 3; Farmer' v. Russell, 1 B. & P., 296; Thomson v. Thomson, 7 Ves., 470;* and *Sharp v. Taylor, 2 Ph. Ch., 801,* are cited with approval. See also *Brooks v. Martin, 2 Wall., 70; Murray v. Vanderbilt, 39 Barb., 141.* These cases are directly in point, and meet with our approval.

The judgment must be affirmed, with costs.

CHRISTIANCY and CAMPBELL, JJ., concurred.

GRAVES, CH. J.

I am not able to agree with my brethren.

The defendants in error brought an action for money had and received against Willson to recover out of his hands and transfer to their own a fund or sum they jointly claimed he unlawfully withheld from them. They were allowed to recover in the court below, and Willson brought error. It appears by the case that the plaintiff and defendants united in getting up a horse fair association, and that the business was done somewhat loosely. The fund or money in contest was obtained through the prosecution of this joint enterprise by the associates. Willson and Owen, one of the plaintiffs below, took a leading and active part in getting up and carrying out the scheme, and they were the only witnesses called on the trial. Owen testified for the plaintiffs below and explained the origin and course of the adventure, and Willson testified in his own behalf. In regard to some of the main points, there was no contradiction or conflict.

Owen stated that when the organization was made and officers chosen, he was made secretary, and a gentleman by the name of West, who was a member, was chosen treasurer; that Mr. West declined, and that Mr. Willson was then named as a fit person for the place, and that he (Will-

son) was then "accepted by the society and acted in that capacity afterwards."

Mr. Owen further testified that a stock book was procured, and that he and Willson solicited subscriptions, and in doing so read the agreement of association to those who were not fully informed about the matter.

This agreement was a brief paper in the following terms: "We, the undersigned, *hereby agree* to pay the amount placed opposite our names for the purpose of having and holding a horse fair, the subscription to be paid in the following manner: one half of the amount subscribed to be paid to the treasurer on or before the 18th of July, 1873; the balance of subscription not to be called in at all, unless required, in whole or in part, to pay any deficit there is, if any there be, in holding said meeting. In case said meeting should prove a financial success, and after paying all expenses of said meeting, there is found a balance in the treasury, then *a dividend* shall be declared upon the whole amount of stock signed for, and for which a certificate shall have been issued.

"Detroit, July 7th, 1873."

Owen put Willson down on this paper for two hundred dollars, and the evidence is that the latter never actually paid any thing on this subscription, nor received delivery of the stock certificate made out for him. But he acted from the outset as one of the joint body and as treasurer of the concern. On his cross-examination, it is true, Mr. Owen stated that it was verbally agreed, apart from the written article, that only those who paid should be members; but in explanation of this he shows clearly that what he meant and referred to was a mere casual talk among a portion only of the members, and which happened after the organization, and was hardly more than an expression of the views of those present in regard to the privileges which those not having in fact paid would be entitled to at the races.

This part of the testimony, when read together, was not

adapted to show, and had no tendency to show, that the associates mutually assented to any new term or supplementary regulation, or that it was supposed by any body that Willson was excluded. Indeed, this talk mentioned by Mr. Owen was plainly, I think, without force to bind any one.

The circuit judge, among other directions, told the jury that if they should find it *was intended* by *the parties* that any one failing to pay half should not be a member, and should further find that Willson did so fail, they should then consider that he was not a member, and in that event might regard him as liable to suit by the other parties to draw from his hands into their own whatever of the fund still remained.

Now, the evidence was strong and uncontradicted that Willson acquiesced in Owen's act in putting his name down; that he (Willson) regarded himself as in fact a member, and was so considered and recognized by the others. The undisputed conduct of all the parties expressed in the clearest manner, it seems to me, that Willson was as absolutely one of the joint associates as Owen. If there was any chance for doubt upon the words of the written article, the acts of the parties would remove it. But the agreement did not make the right to enter into the joint relation depend on payment, and nobody considered that it did. The relation was to precede payment, and by entering into the relation the party bound himself to make payment. Willson's acquiescence in Owen's act, and the course of all concerned, proved that the relation existed. He was one of the most active in getting up the society, and held the most important place in it. It is not customary, I think, in case of such enterprises, to entrust the collection, keeping and disbursing of the funds, to outside parties, and all the evidence leads to the opinion that the leading agents and managers here were to be confined to members. In short, it appears to me clear that Willson was positively constituted a subscriber and joint associate, and by the act and consent of

all singled out as the very one to receive whatever it was his duty as subscriber to pay, and that there is no evidence entitled to be regarded as tending to the contrary.

Whatever legal or moral obligation he may have been under to the company, whatever right may have existed against him for payment on his subscription, his standing in the association was a fact not open to contradiction by himself or any of the adventurers. As a joint associate with the others, he had a joint legal interest with them in the fund in question, and it was not competent for the plaintiffs below to transfer by the suit at law the joint fund from one of the joint associates to the rest. I therefore think there was no ground, on a fair view of the case, for the assumption that Willson's membership was questionable. In taking the sense of the jury as to his membership, and in permitting a verdict against him, if they should conclude he was not a joint associate, in my judgment the court erred.

I think the judgment should be reversed.