## O'BRYAN v. FITZGERALD.

1. LIQUOR: *Action on illegal sale of.*

A mere knowledge by a vendor of liquor that his vendee will resell it in violation of law will not vitiate his sale; but if he designedly contributes to the scheme for the illegal sale, or is to derive a benefit from it, or if there is a unity of purpose between him and the vendee in the illegal sale, he is infected with the vendee's criminality and his contract of sale to him is void, and no action can be maintained to recover the value of the liquor.

2. PRINCIPAL AND AGENT: *Action upon illegal contract.*

An agent who undertakes to perform a contract which is against public policy, or in violation of law, is under no obligation to perform it, but may violate it with impunity; but if he collects money for his principal upon an executed illegal transaction, the principal can recover it by an action for money had and received for his use as upon an express or implied promise by the agent to pay it. Or if the principal repents of his illegal design, while the contract remains executory, he can rescind it and recover the property or money advanced to further the illegal act and so prevent it from being done.

APPEAL from *Garland* Circuit Court.

Hon. J. B. WOOD, Judge.

*J. M. Harrell*, for appellant.

Whether this was a sale, or a consignment, it was an illegal transaction; the contract is invalid, as contemplating a violation of a statute, and cannot be made the foundation of a right to recover. *Story Agency, sec. 344; 32 Ark., 620; 25 ib., 209; Carth., 252; 1 M. & S., 596; 1 B. & P., 551; ib., 593; 10 Fost., 540; 24 Vt., 486; Story Sales of Pers. Prop., sec. 505.*

*E. W. Rector* and *George H. Sanders*, for appellee.

Appellant, by accepting the goods under the contract,

became the agent of appellee to sell the goods and account for the proceeds, and having sold them and received the money, he cannot protect himself by pleading that the contract was illegal. *1 Bailey.(S. C.), 315 ; 22 La. Ann., 599; 46 Vt., 402; 3 Dessaus (S. C.) Anderson v. Moncrief; 16 Wall, 499 ; 44 N. H., 414; 30 Mich., 474; 23 Ark., 221.*

COCKRILL, C. J.   Jacks and Fitzpatrick were partners in business, and largely engaged in the sale of "Fitzpatrick Bitters," a compound containing intoxicating liquor as a chief ingredient, as the proof shows.   They consigned twenty-five cases of this liquor to O'Bryan for sale, agreeing to give him all over a stated price per case realized. At the same time they represented to O'Bryan that the liquor could be sold without license, gave him a number of circulars for general distribution which contained the same statement, and authorized him to sell with a guaranty that the liquor could be resold without license, and that they would hold harmless from all damage those who purchased from him and resold without procuring a license.

This transaction was subsequent to the act of March 8, 1879, which prohibits the sale of "any compound or preparation" of ardent spirits "commonly called tonics, bitters, or medicated liquors, in any quantity or for any purpose whatever, without first procuring a license," to exercise the privilege.   A sale of these same bitters, without license, was held to be an indictable offense in *Foster v. State, 36 Ark., 258.*

The contract between the parties amounted then to this : That O'Bryan, who was a licensed liquor dealer, should sell Jacks & Fitzpatrick's liquor to be resold in violation of this statute.   Under this arrangement O'Bryan sold a part of the liquor, when the appellees called for a settlement, and not being satisfied with his answer, demanded

O'Bryan v. Fitzpatrick.

pay for the goods sold and possession of what he had on hand; and not receiving either, they sued him for the value of the twenty-five cases, as for goods sold and delivered by them to him. The question is, can they recover?

It is well settled that an act which is forbidden by statute cannot be made the foundation of a contract. (*Lindsay v. Rottaken, 32 Ark., 620.*) It follows that a sale of liquor in violation of law is illegal. (*Dunbar v. Johnson, 108 Mass., 519.*) A mere knowledge by the vendor that liquor is to be resold in violation of the statute, without a participation in the illegal act, will not vitiate the sales he may make to the intermediate dealers. (*1 Whart. Cont., sec. 343; Tatum v. Kelley, 25 Ark., 209; Parsons Oil Co. v. Boyett, 44 ib., 230.*) But if the vendor designedly contributes to the scheme, or is to derive a benefit from it, or if there is a unity of purpose between him and the party to be supplied, he is infected with the latter's criminality, and the contract is void. (*Fisher v. Lord, 63 N. H., 514; Foster v. Thurston, 11 Cush., 322; Riley v. Jordan, 122 Mass., 231.*) Here the effect of the arrangement between Jacks & Co. and O'Bryan was, that parties should be incited to purchase for the purpose of violating the law, under a guaranty from the vendors to shield them from the consequences of the violation. This made all the parties concerned active participants in the illegal act of sale.

O'Bryan was only the agent of the appellees to effect the illegal sales, but an agent who undertakes to perform a contract which is void as against public policy, or in violation of law, is under no legal obligation to carry out his undertaking. He may violate his instructions or his moral obligation in regard to it with impunity, for the law refuses to interfere in such matters, upon the principle that no suit can arise from an illegal transaction. (*Whart. Agency,*

*[margin notes]*
1. LIQUOR: Action on illegal sale of.

2. PRINCIPAL AND AGENT: Action on illegal contract.

*sec. 249.*)   The courts will not interfere between the guilty participators for the benefit of either, but will leave them in the condition in which they are found, from motives of public policy, even though the defense of illegality may appear unconscientious.  (*Martin v. Hodge, 47 Ark., 378* )   But "judges are not astute," it has been said, "in finding means to enable one rogue to defeat the better rights of·another," and so when money has been collected for the use of a principal by an agent employed in an executed illegal transaction, the former may sue him for money had and received to his use, and recover it upon the agent's express or implied promise to pay, the courts declining to look beyond this promise to the illegal contract.   *Brooker v. Parker, 23 Ark., 390 ; Brooks v. Martin, 2 Wall., 70 ; Planter's Bank v. Union Bank, 16 ib., 483 ; Wilson v. Owen, 30 Mich., 474 ; Baldwin v. Potter, 46 Vt., 402 ; Pointer v. Smith, 7 Heisk., 137, 144; Leman v. Grosskopf, 22 Wis., 447.*

Or if a party repents of his illegal design while the contract continues executory, he may rescind, and the courts will aid him to recover his money or property paid or advanced to further the illegal act, and so prevent the thing from being done.   *Perkins v. Clemen, 23 Ark., 221 ; McLain v. Huffman, 30 ib., 428; Spring Co. v. Knowlton, 103 U. S., 49.*

But in the case before us the attempt is not to recover money paid to an agent to the principal's use, nor is it a case of repentance or contrition.   The plaintiff's have not sought to disaffirm·the contract made with O'Bryan, and retake their goods ; or to show that they have been sold by O'Bryan, and the price received by him to their use, but they claim the value of the goods from a guilty participator as upon a contract of purchase and sale.

This is an affirmance on their part of the validity of the

contract between them and O'Bryan, whether it was in fact one of sale or consignment. To sustain their demand would be to recognize and enforce their illegal contract; but the maxim, *"melior est conditio possidentis,"* applies, and we must leave the matter in the condition the parties themselves have placed it.

Reverse the judgment and remand the cause for further proceedings not inconsistent with this opinion.