[No. 2001.   Decided January 9, 1896.]

·FINLEY MCDONALD, *Appellant*, v. THOMAS LUND, *Respondent*.

ASSUMPSIT — RECOVERY OF MONEY DUE UNDER ILLEGAL CONTRACT.

An action for money had and received will lie at the instance of one who has been a partner with another in conducting gambling transactions, to recover from the latter, after their operations had ceased, a portion of such proceeds, which it had been agreed plaintiff was entitled to, but which had remained in the hands of the defendant on deposit and had never been actually segregated from the capital and winnings of the gambling operations.

Appeal from Superior Court, Yakima County.— Hon. CARROLL B. GRAVES, Judge.   Reversed.

*Frank H. Rudkin*, for appellant.

*H. J. Snively*, and *Fred Miller*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This was an action brought by the plaintiff against the defendant to recover the sum of $452.25, alleged to be the balance due for money had and received by the defendant to the plaintiff's use. The answer denied the main allegations in the complaint and alleged affirmatively that the plaintiff and defendant were engaged together in running certain games of chance, and that all moneys received by the defendant were so received for the purpose of using the same as the capital in running the games of chance so carried on by plaintiff and defendant, and that the defendant did not otherwise receive any money in which the plaintiff had an interest. The plaintiff replied, denying the affirmative portions of the answer, and the case was submitted to the court upon the following agreed statement of facts, viz:

That at the time mentioned in the complaint the plaintiff and defendant and one French were engaged in conducting and carrying, on certain faro and crap games in the city of North Yakima, as partners, plaintiff having a one-half interest in the moneys invested in said games and sharing one-half the profits and losses of said games, the two other partners having a one-fourth interest each. (2) That from time to time moneys were drawn from said games and the sums so drawn were divided between the plaintiff and defendant and the said French in the proportions above mentioned, plaintiff's portion thereof being deposited and left with defendant in whose place of business said games were conducted, the plaintiff never receiving the same. (3) That when the said plaintiff and defendant and the said French ceased to conduct and carry on said games, the moneys then on hand belonging to said partners were divided in like manner

in the proportions above mentioned, the plaintiff's
portion thereof being deposited and left with the de-
endant, the plaintiff never receiving the same.  (4)
That the plaintiff's portion of the money after division
was never actually segregated from the defendant's
but that they agreed upon the portions thereof to
which each was respectively entitled.  (5) That the de-
fendant was the banker for said games in said part-
nership; that all of the moneys belonging to said
games were kept by said defendant, both capital and
winnings; that at the close of the games from time to
time it was agreed between the said partners what the
interest of each was, in the moneys in the hands of
said defendant, but the moneys continued in the de-
fendant's possession without any change in said pos-
session.  (6) That when plaintiff and defendant and
said French ceased to operate together as such part-
ners, it was understood and agreed by all of said
partners that the plaintiff was entitled to the sum of
$431.25, out of the moneys bolonging to said partner-
ship in said games, then in defendant's possession.
It was further agreed that judgment should be entered
on the foregoing facts as the law might require.

The court below was of the opinion that the case
fell within the maxim *ex turpi causa non oritur actio*,
and dismissed the action.  It is conceded by the ap-
pellant that courts will decline to lend their aid to the
enforcement of an executory contract which has for
its object the performance of some act or the accom-
plishment of some end which is contrary to law or a
sound public policy, and this whether the act or end
contemplated by the contract is a felony or misde-
meanor at law.  It is conceded that the business in
which these parties were engaged was an illegal one by
express statutory provision.  It is insisted, however,

by the appellant, that this case does not fall within the rule above conceded, but within one of the limitations of such rule; that the obligation of the respondent in this case was a collateral obligation in a manner connected with or growing out of the illegal transaction, but that it is not an attempt to enforce the illegal contract; that the illegal contract had been fully executed, and that there is a new, independent and implied contract which the plaintiff will not be precluded from enforcing.

The first case cited by appellant in support of his theory is *Sharp v. Taylor*, 2 Phil. Ch. 801, where the court drew a distinction between enforcing illegal contracts and asserting title to money which has arisen from them. There it was held that the courts would not refuse to administer justice between joint importers of articles of commerce merely upon proof that such importation was illegal and a violation of the laws of the country, and that one of two partners who had possessed himself of the property of the firm would not be allowed to retain it by showing such illegality. In the course of its opinion the court says:

"Can one of two partners, in any import trade, defeat the other, by showing that there was some irregularity in passing the goods through the custom house? The answer to this . . . will be that the transaction alleged to be illegal is completed and closed, and will not be in any manner affected by what the court is asked to do, as between the parties. Do the authorities negative this view of the case? The difference between enforcing illegal contracts and asserting title to money which has arisen from them is distinctly taken in *Tenant v. Elliott,* (1 Bos. & Pull. 3) and *Farmer v. Russell,* (id. 296) and recognized and approved by Sir WILLIAM GRANT in *Thompson v. Thompson,* (7 Vesey, 473)."

It would seem that this case is identical with the

one at bar. The transaction that is alleged to be illegal here,—that is, the carrying on of games of chance,—is completed and closed, and cannot in any manner be affected by what the court is asked to do between the parties to this action.

Again, this is not a case to enforce any illegal contract, but it is to assert title to money which was accumulated under such illegal contract. If the plaintiff here had brought an action against the defendant for not complying with his contract in running these games, of course it would fall within the rule claimed by the respondent, but here the real contract on which he sues, it seems to us, is a contract of deposit. Under the stipulated facts the illegal transaction which these parties had agreed to pursue had ended. The partnership for that purpose was no longer in existence. The business was no longer being carried on. A determination of the amount of money due from the defendant to the plaintiff had been reached. It was agreed that the defendant owed the plaintiff the sum of money sued for, and that he was entitled to that amount, and the plaintiff's portion was simply left with the defendant on deposit. It is true that it was not segregated from the money belonging to the defendant and the other partner, but that would have been a purely physical transaction which could not have affected the result in any way, and it would have made no difference in the right or wrong of the case whether the money had been actually counted out to the plaintiff and then deposited with the defendant, or, when the amount that was due the plaintiff was agreed upon, he had deposited it without such physical segregation.

This doctrine was announced and this distinction made nearly one hundred years ago in the case of

*Tenant v. Elliott*, 1 Bos. & P. 3, where A having received money to the use of B on an illegal contract between B and C, it was held that he should not be allowed to set up the illegality of the contract as a defense in an action brought by B for money had and received.   BULLER, Justice, in deciding the case, said:

" Is the man who has paid over money to another's use to dispute the legality of the original consideration?   Having once waived the legality, the money shall never come back into his hands again.   Can the defendant then in conscience keep the money so paid? For what purpose should he retain it?   To whom is he to pay it over; who is entitled to it but the plaintiff?"

And EYRE, Chief Justice, said:

"The question is, whether he who has received money to another's use on an illegal contract can be allowed to retain it, and that not even at the desire of those who paid it to him?   I think he cannot."

And in *Farmer v. Russell*, 1 Bos. & P. 296, it was held that if A received money of B to the use of C, it could be recovered by C in an action for money had and received, though the consideration on which B paid it was illegal.   In that case the case of *Tenant v. Elliott, supra,* was reviewed and it was held that the obligation arose out of the fact of the money's having been received to the use of the plaintiff which created a promise in law to pay; and BULLER, justice, in concurring in the opinion of Chief Justice EYRE, said:

" It seems to me that all the confusion in this case has arisen from the plaintiff having proved too much at the trial.   He should have shown that the plaintiff received so much money to his use, and it was immaterial whether the money were paid on a legal or an illegal contract.   .   .   .   Here the money having

been paid by another to the plaintiff's use, the illegal contract is out of the question."

This distinction, viz., the difference between suing on, or trying to enforce, the illegal contract itself and a suit to recover money, which is admitted to be due although it may have been obtained by prosecuting an illegal enterprise, has always been respected by the courts from its announcement in the cases we have above cited up to the present time.

In the case of *McBlair v. Gibbes*, 17 How. 232, the cases of *Tenant v. Elliott, Thompson v. Thompson, Sharp v. Taylor* and *Farmer v. Russell, supra*, were endorsed. In *Brooks v. Martin*, 2 Wall. 70, the supreme court of the United States held that after a partnership contract, confessedly against public policy, had been carried out and money contributed by one of the partners had passed into other forms — the results of the contemplated operation completed — a partner in whose hands the profits are cannot refuse to account for and divide them on the ground of the illegal character of the original contract. And in *Planters' Bank v. Union Bank*, 16 Wall. 483, it was held that though an illegal contract will not be enforced by courts, yet it is the doctrine of that court that where such a contract had been executed by the parties themselves and the illegal object accomplished, the money or thing which was the price of it would be a legal consideration between the parties for a promise expressed or implied, but that the court will not unravel the transaction to discover its origin. This doctrine is applied to the case of money received for the sale of confederate bonds. In the course of its opinion the court said:

"But when the illegal transaction has been consummated; when no court has been called upon to give

aid to it; when the proceeds of the sale have been actually received, and received in that which the law recognizes as having had value; and when they have been carried to the credit of the plaintiffs, the case is different. The court is there not asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case. It is enough that the defendants have in hand a thing of value that belongs to them."

In the case at bar it is conceded by the statement of facts that the defendant has in hand a thing of value that belongs to plaintiff. It certainly does not belong to defendant, and he has no right, either moral or legal, to keep it. If the question were between the plaintiff and the parties from whom this money was obtained, of course another principle would intervene, but to allow a depositary of a person's money to refuse to turn it over to him because the owner of the money had violated some law in obtaining it would be little short of encouraging robbery.

In *De Leon v. Trevino*, 49 Tex. 89 (30 Am. Rep. 101), it was held that, although a contract may be illegal, it does not follow that it is illegal or immoral for the parties to it, after its completion to fairly settle and adjust the profits and losses which have resulted from it. The vice of the contract does not enter into such settlement. It is true that, in that case, at the settlement the defendant had given his note in settlement of the balance agreed upon, but that does not change the principle nor add anything to the settlement. The note was only an evidence of the amount. that had been agreed upon as the share of the plaintiff, and it is conceded in this case that the amount sued for had been agreed upon.

In *Pfeuffer v. Maltby*, 54 Tex. 454 (38 Am. Rep. 63), the same principle was announced, and it was also de-

cided in *Gilliam v. Brown*, 43 Miss. 641, that it was well settled that after the illegal contract had been executed, one party in possession of all the gains and losses resulting from the illicit traffic and transactions, would not be tolerated to interpose the objection that the business which produced the fund was in violation of law. This case goes further than is necessary to support the action in the case at bar, because here there was a settlement and no occasion for an accounting; and many of the cases cited by the respondent simply go to the extent of holding that the courts will not enforce an accounting under contracts admitted or proven to be illegal.

We have with some considerable care examined all the numerous cases cited by respondent, but have been unable to conclude that they in any way contradict the principles announced in the cases cited by appellant, which we think are cases parallel to the one under consideration. Referring to the most prominent cases upon which respondent relies to sustain his theory, we commence with *Dent v. Ferguson*, 132 U. S. 50 (10 Sup. Ct. 13). We think that case is easily distinguished from the one at bar. That was an action brought directly to set aside and declare void the contract itself which was alleged to have been illegal, and under all the authorities we think this could not be done; that the parties to the illegal contract would be left by the law where they placed themselves; and there could be no independent or implied contract in the case. The court specially distinguishes that case in the following language:

" The principles established by those decisions in diversified forms, according to the varying cases, is that a new contract, founded on a new and independent consideration, although in relation to property

respecting which there had been unlawful or fraudu-
lent transactions between the parties will be dealt with
by the courts on its own merits.   If the new contract
be fair and lawful and the new consideration be valid
and adequate, it will be enforced.   If, however, it be
unfair or fraudulent; or the new consideration so in-
adequate as to import fraud, imposition or undue in-
fluence, it will be rescinded and justice done to the
parties." (Citing the cases of *McBlair v. Gibbes;
Brooks v. Martin, Planters' Bank v. Union Bank, supra,*
and *Railroad Co. v. Durant,* 95 U. S. 576.) " But in
all of those cases the court was careful to distinguish
and sever the new contract from the original illegal
contract.   Whether in the application of this princi-
ple some of them do not trench upon the line which
separates the cases of contracts invalid in consequence
of their illegality from new and subsequent contracts
arising out of the accomplishment of the illegal ob-
ject, is not the subject of inquiry here.   The present
case does not involve any question of a subsequent
and distinct contract, but seeks relief directly from
the original fraud, to which the person under whom
complainants claim was a contracting party fully
sharing in the fraudulent intent."

That was a case wherein the defendant under the
contract was to sell, and did sell, to the plaintiff all
his estate, for the purpose of compelling a settlement
with the creditors of the defendant on terms which
were not favorable to the creditors, so that it will be
seen that the language quoted in the appellant's brief,
from this case, has no application or bearing upon
the case at bar, but that the cases are expressly dis-
tinguished by the court; and there is no intimation
in that case that the rule announced by the same court
in *Brooks v. Martin, McBlair v. Gibbes,* and *Planters'
Bank v. Union Bank, supra,* should be in any way
modified or disturbed.

*Goodrich v. Tenney,* 144 Ill. 422 (33 N. E. 44, 36 Am.

St. Rep. 459), is the same kind of a case. It was an action upon a contract, founded upon the decision of *Dent v. Ferguson, supra,* and specifies the same distinctions announced in that case, and the court in that case said:

"The controversy here arises between the parties to the illegal agreement, and appellant must, if at all, assert his claim to the money in Tenney's hands through and under that contract. Treat that as void, as if never made, and there is nothing upon which appellant can base a claim to the money."

The court proceeds to distinguish that case from the cases of *McBlair v. Gibbes, supra,* and *Willson v. Owen,* 30 Mich. 474, and the other cases cited above. In fact, without specifically reviewing them further, they are all cases in which, as said by the court just quoted, if the contract itself was wiped out of existence there would be nothing upon which to base the claim of the plaintiff which was denied. But not so in the case at bar. There is an admission in this case that there was due the plaintiff the amount which he claims, and it was upon that admission or settlement or fact that this action was brought, and the court will not be anxious to inquire into the way by which this money, admitted to be the money of the plaintiff, came into the hands or the possession of the defendant. The action was not founded upon the alleged illegal contract, nor brought to enforce any of the conditions or stipulations of that contract. As was said by the court in *De Leon v. Trevino, supra,* the illegal enterprise and all the matters connected with it were voluntarily settled and adjusted by these parties, and while we are not enthusiastic in aiding a confessed law breaker to obtain the fruits of his illegitimate enterprise, we think that all the authorities, when prop-

erly discriminated, accord this right in a case of this kind, and we feel constrained to follow them.

The judgment will therefore be reversed, and as it appears by the stipulated facts that there ·is no other defense to this action than the one we have just discussed, it would be imposing unnecessary expenses and delays to send it back for a new trial, and therefore the lower court will be instructed to enter judgment in favor of the plaintiff for the amount prayed for.

HOYT, C. J, and ANDERS, SCOTT and GORDON, JJ., concur.