## ERPELDING *v.* McKEARNAN.

CONTRACTS—ILLEGALITY—EFFECT—PARTIES IN PARI DELICTO.

A corporation having sold all its property, business, and good will to another corporation engaged in the same business, one of the stockholders in the selling corporation brought suit against the managing stockholder to recover his proportionate share of a sum which he alleged was paid by the purchaser to the manager as a part of the consideration for the sale in accordance with a secret agreement between them. *Held,* that evidence offered by defendant that the sale was a part of a fraudulent scheme on the part of the parties to create a monopoly in the business was admissible, since if plaintiff was party to the illegal contract he could not recover.

Error to Muskegon; Russell, J. Submitted October 11, 1905. (Docket No. 34.) Decided March 27, 1906.

Assumpsit by George B. Erpelding against John McKearnan for money had and received. There was judgment for plaintiff, and defendant brings error. Reversed.

*Cross, Lovelace & Ross* (*Harrison Geer,* of counsel), for appellant.

*Nims, Hoyt, Erwin, Sessions & Vanderwerp,* for appellee.

MOORE, J. In April, 1900, a corporation was organized in Chicago with $20,000 capital, known as the " Century Seating Company." Its business was to be the manufacturing and selling of school furniture and school supplies. The plaintiff and his brother John E. Erpelding owned one-half the stock of said corporation. Mr. McKearnan, the defendant, was the man who suggested the organization of the corporation. He was a stockholder

therein, and its manager. A company known as the "American School Furniture Company" was already doing business in Chicago. Soon trouble and litigation arose between the two corporations.

It is the claim of plaintiff that in the latter part of the year 1901 an agreement was made at Chicago through Mr. McKearnan, acting for the Century Seating Company, with the American School Furniture Company that the latter should become the purchaser of all the stock, business, and good will of the Century Seating Company, and that plaintiff and his associates were led to believe that the consideration therefor was the sum of $30,000. That said sale was made and said $30,000 was divided between the stockholders of the Century Seating Company, the plaintiff and his brother receiving thereof $15,000. It is the further claim of plaintiff that before he commenced this suit he learned for the first time that Mr. McKearnan had a secret agreement with the officers of the American School Furniture Company that McKearnan should be paid $8,500 in addition to the $30,000 already mentioned, and that this was kept from the plaintiff and his brother and the other stockholders. Upon receipt of this information the plaintiff took an assignment from his brother of his interest, and it is to recover one-half of the $8,500 so paid to Mr. McKearnan that this suit is brought.

Mr. McKearnan interposes by way of defense the claim that the American School Furniture Company was a trust organized for the purpose of controlling the manufacture and sale of school furniture, and that its purpose in acquiring the Century Seating Company was to remove a competitor in its business, and that as part of the consideration for the purchase by the American School Furniture Company, it was agreed that there should be spread upon the books of the Century Seating Company an agreement to hire Mr. McKearnan for five years at the sum of $3,000 a year, and that the Century Seating Company should continue to exist as a corporation, and should be held out to the public as a corporation still independent of the trust,

and as doing business on its own account, and that the plaintiff and his brother were parties to that agreement, and consented to its being made, were participants therein and in the fruits thereof. It is further claimed that said agreement was contrary to public policy, and was so tainted that the law will leave all the parties thereto where they left themselves.

The further defense is made that no part of the $8,500 which was paid to defendant was paid as part of the consideration for the stock, good will, and business of the Century Seating Company, but it is Mr. McKearnan's claim that the American School Furniture Company recognized that he was practically the Century Seating Company, and desired to obtain his services and in consideration of his agreeing, in case the American School Furniture Company made the purchase as contemplated, that he would enter into its employ for the period of five years at the ostensible salary of $3,000 a year, that it would pay to him in addition thereto the sum of $8,500, and that the payment was made as agreed and for that purpose only.

The circuit judge upon the trial submitted to the jury one question only, and that was whether the $8,500 was paid to Mr. McKearnan as part of the purchase price of the stock, good will, and business of the Century Seating Company, and charged the jury if it was, then the plaintiff was entitled to a judgment for one-half the amount thereof. On the other hand, he charged them if the payment was made to Mr. McKearnan as part of the compensation which he was to receive as an employé of the American School Furniture Company for the five years, which he agreed to work for them, the plaintiff could not recover. The jury found a verdict for the full amount of the claim of the plaintiff. The case is brought here by writ of error.

The questions involved in the case all center about the one question as to whether the transaction between the two corporations, if as claimed by the defendant, was so tainted with fraud because against public policy that the

law would leave the parties where it found them. If the defendant is right in this claim the case should be reversed. If wrong it should be affirmed.

We can present the issues involved in no better way than to quote from the briefs of counsel. Counsel for plaintiff say:

" The stockholders and owners of the Century Seating Company sold their entire interest in such company and the entire plant, assets, business, and good will of the company. The consideration for the property was paid in cash by the purchaser. The vendors retained no part of, no interest in, and no control over, the property sold. After the sale, none of the vendors had any connection with the property except that the defendant and possibly the plaintiff were employed by the vendee and paid salaries which constituted the consideration for their services. Such a sale and transfer, even to an illegal trust or monopoly, is not unlawful. As well might it be said that the farmer is prohibited from selling his wheat to the board of trade operator who is seeking to ' corner' the wheat market, or from selling his cattle to members of the beef trust.       *       *       *

" The alleged illegality of the contract in question cannot avail the defendant as a defense to this action for the reason that such contract was not between plaintiff and defendant, but was with third persons who have fully performed the same and paid over the moneys to defendant for the plaintiff and his assignor, and this suit is not brought to enforce such alleged illegal contract or any part thereof. That contract has been fully performed and executed by the parties thereto. The moneys sought to be recovered have been paid to the defendant by the representatives of the American School Furniture Company for the plaintiff's use. The illegality (if any) of the original transaction at most ' only appears incidentally in explaining whence the moneys were received.' Neither the American School Furniture Company nor the public will be benefited or injured in any manner by the enforcement of the implied contract of the defendant to pay to the plaintiff the moneys received by the former for the latter's use. To establish his case, it was not necessary for plaintiff to prove or rely upon the alleged illegal contract or any part thereof." Citing *Willson* v. *Owen*, 30 Mich. 474, 475; *Richardson* v. *Welch*, 47 Mich. 309–312; *Peo-*

*ple* v. *Hawkins,* 106 Mich. 479–484; *McDonald* v. *Lund,* 13 Wash. 412; *Planters' Bank* v. *Union Bank,* 16 Wall. (U. S.) 483; *Armstrong* v. *American Exchange Nat. Bank,* 133 U. S. 433, and many others.

Counsel insist that in most, if not all, of the cases, including those cited and so copiously quoted by counsel for defendant, wherein the right of recovery has been denied will be found, upon examination, to have been suits upon the illegal contract itself. Counsel for defendant say:

"We are not contending that a mere sale of stock or property to an illegal trust, is, in itself, unlawful. On the contrary, we expressly conceded that one corporation, or one or all of its stockholders, might sell their stock to whomsoever they saw fit.

"Our claim was that the stockholders of the Century Seating Company did not stop with a mere sale of the entire capital stock and property of that corporation, which, under some circumstances might have been an innocent act, but that they went further—that other, and unlawful elements, entered into the transaction, which stamped it as being in violation of law, and which contaminated and destroyed any cause of action which plaintiff might otherwise have; that except for the unlawful features of the contract, no sale could have been made; that the unlawful elements were the major consideration for which the moneys were paid; that the contract was made to further the unlawful objects and purposes of the American School Furniture Company, and was therefore void on the ground of public policy, independent of any statutory provisions;  *  *  *

"The principal object of the sale was the stifling of competition, and the parading of the Century Seating Company in the guise of a competitor 'not in the trust,' when, as a matter of fact, the plant of the Century Seating Company was to be dismantled and shipped to the different factories of the American School Furniture Company, as was done within two or three weeks from the date of the sale, the whole purpose of the transaction being to subserve the unlawful objects of the American School Furniture Company.

"The unlawful purposes of the transaction were of the very essence of the contract, and cannot be separated therefrom. Yet the jury were not permitted to pass upon

the question whether the unlawful elements of the contract formed any part of the consideration for the payment of the moneys sought to be recovered."

They insist the evidence tending to show the illegality of the contract should have been admitted, and the jury, under proper instructions, permitted to pass upon the question, citing *Richardson* v. *Buhl*, 77 Mich. 632 (6 L. R. A. 457), *Detroit Salt Co.* v. *National Salt Co.*, 134 Mich. 103, and many other cases, but relying especially upon *Richardson* v. *Buhl*, supra, and the cases cited therein, and *McMullen* v. *Hoffman*, 174 U. S. 639, from which counsel quote freely.

It must be remembered we are not to decide whether an illegal contract was established to which plaintiff was a party, for the trial judge declined to allow defendant to go into that question. It may be that if defendant had been allowed to make what proof he could he would have failed to establish the fact that plaintiff and his brother were parties to an illegal contract. We must assume for the purposes of this case that if permitted to introduce his testimony he could have established the fact. There is a difficulty in harmonizing all the cases cited, and we shall not enter upon that task. The principles involved are discussed at great length in *Richardson* v. *Buhl*, supra, *Detroit Salt Co.* v. *National Salt Co.*, supra, and in *McMullen* v. *Hoffman*, supra. These cases we think are according to the great weight of authority. We have not overlooked the cases cited by counsel for plaintiff, but we think many of them are distinguishable from this case. In *Willson* v. *Owen*, 30 Mich. 474, the question was submitted to the jury as to whether Willson was associated with the plaintiffs in the illegal venture, and they found he was not. Attention is called to this fact in the opinion, and the court afterwards say:

"The implied promise of one holding moneys for such an association must be understood to be, to make payment to those who are associates when suit is brought. * * *

"The illegality of this association only appears incident-ally in explaining whence the moneys were received; but the ground of recovery is that the moneys were received for the plaintiffs, and it is not material how or on what account they came to his hands, if in fact for the plaintiffs' use."

But suppose it had been found that plaintiff and defendant alike had been engaged in the illegal transaction, is it not likely a different result would have been reached? Suppose three men enter into a conspiracy to sell a gold brick to a farmer, and succeed in the transaction and get away, one of them carrying with him a sum of money as a result of the successful carrying out of the conspiracy, can it be said that, after the transaction between the farmer and the conspirators is ended, if the conspirator who had the money withheld it, the law would aid the other two in recovering an equal share of it from him? We think the question must be answered in the negative. The other cases cited are either distinguishable, or, if not, we decline to follow them. This disposition of the case makes it unnecessary to pass upon the other questions.

Judgment is reversed, and a new trial ordered.

McALVAY, GRANT, BLAIR, and OSTRANDER, JJ., concurred.

GRANT, J. I concur in the opinion of my Brother MOORE. Courts will not aid parties in the distribution of the funds obtained by joint criminal conduct, or by a conspiracy to violate the laws of the country, when the claimant is a party to such conspiracy. If the plaintiff in this case was not a party to the agreement made with Mr. McKearnan, and was not an active party to any fraudulent scheme to evade the law and create a monopoly, he is entitled to recover. If he was he is not. Mere knowledge on plaintiff's part of the unlawful purpose of the purchasers of the plant would not be sufficient to make him a party to the conspiracy. It often happens that a manufacturer cannot afford to fight a trust or monopoly, and,

rather than face financial ruin, will sell to such trust or monopoly. The law protects him in so doing, and will not permit the purchaser to set up the illegality of its own acts, intents, and purposes in defense of his contract.

McALVAY, BLAIR, OSTRANDER, and MOORE, JJ., concurred.