SHEAHAN v. McCLURE.

CONTRACTS—MONEY LOANED FOR ILLEGAL PURPOSE—PRINCIPAL AND
    AGENT—LIABILITY OF AGENT.
    Where money is loaned for the purpose of betting at races
    and is repaid to an agent of the lender, the agent can be
    required to account for the money received, as the contract
    of agency, created upon receipt of the money, is not viti-
    ated by the illegal gambling contract between the prin-
    cipal and the borrower.

Error to Wayne; Hally, J. Submitted October 8,
1917. (Docket No. 44.) Decided December 27, 1917.

Assumpsit by Mary E. Sheahan, administratrix of
the estate of James F. Sheahan, deceased, against Wil-
liam McClure for money had and received. Judgment
for defendant *non obstante veredicto.* Plaintiff brings
error. Reversed, and remanded.

*Max Hulett,* for appellant.

*A. B. Hall,* for appellee.

STEERE, J. Plaintiff is the widow of James F. Shea-
han, deceased, who was at the time of his death en-
gaged in what is designated a "hand-book business,"
with headquarters at 92 Woodward avenue in the city
of Detroit. Without going into details, it appears that
this line of business activity has to do with betting
ventures on horse races. On Friday, September 17,
1915, Sheahan took an order from a customer, consid-
erately designated as "John Doe," to place a bet of $1,-
050 on a certain horse race, and at the request of the
customer advanced that sum for him, sending it to a
correspondent, or agent, in Chicago to be applied in
betting on a horse race as the customer had directed.
The money was personally advanced by Sheahan

from funds he had on deposit in the Peninsular State Bank of Detroit, upon which he drew a check for the requisite amount payable to the order of William Ryan of Chicago, who indorsed it to the Illinois Trust & Savings Bank of Chicago, or order, whence it was subsequently paid through the Detroit clearing house and charged to Sheahan's account by the Peninsular State Bank. Sheahan lent this money to John Doe upon the understanding that he would call and repay it on or before the following Monday, September 20th. On that day Sheahan was taken seriously ill and removed to a hospital in Detroit, where he died the following Saturday, September 25th.

On Monday, September 20th, the customer, John Doe, went to Sheahan's place of business at 92 Woodward avenue, where he found defendant William McClure in charge and gave to him for Sheahan the $1,-050 in payment of his indebtedness to Sheahan.

A pawnbroker of Bay City named Tierney had an interest in the fund from which Sheahan withdrew the $1,050, and on the day Sheahan sent the money to Chicago, September 17th, he wrote Tierney advising him of the transaction, saying, in part, as follows:

"*Friend Peter:* I got a check from Postal yesterday and had to send check to Chicago for $1,050 for a bet. My man will be in and pay me tomorrow the money and will send check then. It was for a bet I placed for a customer who settles next day when he is home. He is away today, be back not later than Monday."

After Sheahan's death, Tierney, who was in Detroit and attended the funeral, spoke to McClure about Sheahan's indebtedness to him, showing McClure Sheahan's letter. Tierney testified that:

In the interview "he (McClure) said he had nothing to do with it at all. He had nothing to do with the transaction; that that was Sheahan's own personal affairs, and that he didn't even collect it. * * * He said Mrs. Sheahan would have to pay me."

Tierney then presented his claim against her husband to Mrs. Sheahan with his evidence of the indebtedness, and she subsequently paid it. She then made demand upon McClure for the $1,050, which she testified that he at first said "was Mr. Sheahan's matter and he had nothing to do with it; * * * and I asked him about the $1,050, if the man had paid it, and he said he didn't know anything about it," but that, when she said to him she knew who the man was that owed the debt and was going down to ask him about it, he replied, "You need not go down, because he paid it," refusing, however, to pay it over to her because, he said, "Sheahan owed him"; and that he did not then, or at any other time, claim to her it was a partnership asset. McClure denied that he ever told Mrs. Sheahan he had not received the money from the customer, or that it was a personal matter of Sheahan's; stated he did not remember any conversation with Tierney upon the subject "at all"; claimed that he was a partner with Sheahan in the hand-book business and the bet placed by Sheahan for John Doe was a partnership matter; that he had been in business with Sheahan about 25 years, and during that time "there was no limit to what each would do for each other," as a result of which Sheahan was heavily indebted to him; that he advised Mrs. Sheahan "to pay the $1,050, as the firm owed the money," and in that connection said to her if she would pay it "I will never say anything further about what you owe me, or never come to you with any story of the money Jim owed me when he died."

A stipulation in the record, signed by attorneys for the respective parties, authorizing substitution of an amended declaration in place of the original, also reads in part as follows:

"It is further stipulated and agreed, on the part of the defendant, that John Doe, mentioned in said dec-

laration, was indebted to James F. Sheahan, deceased, in the sum of ten hundred fifty ($1,050.00) dollars, and on or about the 20th day of September, 1915, did call at the place of business of said James F. Sheahan, deceased, and in the absence of said James F. Sheahan did then and there leave and pay over the said sum of ten hundred fifty ($1,050.00) dollars to the person then in charge of said place of business, viz., said defendant, and that said ten hundred fifty ($1,050) dollars was then and there paid by the said John Doe in satisfaction of his said debt of ten hundred fifty ($1,050.00) dollars."

It was contended on behalf of defendant in the trial court that plaintiff could not recover because a partnership existed between defendant and Sheahan, and the transaction in question was a partnership matter, which could only be litigated, if at all, in a court of equity; and for the further reason that the alleged debt was the result of a bet on a horse race, and had its inception in a gambling contract, which made the whole transaction illegal; and a verdict should therefore be directed for the defense.

On the other hand, it was claimed for plaintiff that Sheahan and McClure were not in fact partners; but if they were McClure had no interest in this particular transaction, was a stranger to the gambling contract, a third party acting only as bailee, or agent, in receiving the money for Sheahan from John Doe, and could not interpose their unlawful conduct as a defense for refusing to account for it.

Reserving decision upon defendant's request for a directed verdict, the court decided to submit the case to the jury upon the two questions, whether a partnership existed between Sheahan and McClure, and, if so, whether this transaction was part of their partnership business, giving proper instructions as to the law applicable to those propositions. The jury rendered a verdict in favor of plaintiff for $1,050. Before en-

tering judgment thereon, the court decided as a matter
of law that defendant's motion for a directed verdict
should prevail and ordered judgment in accordance
with such decision notwithstanding the verdict; to
which action of the court plaintiff had exception as a
matter of course under the provisions of Act No. 217,
Pub. Acts 1915 (3 Comp. Laws 1915, § 14568 *et seq.*).

Whatever the jury may have found as to the ex-
istence of a partnership, they manifestly decided that
the transaction was not partnership business, and
found that the $1,050 left with defendant at Shea-
han's place of business was, as counsel stipulated,
"then and there paid by the said John Doe in satisfac-
tion of his said debt" to Sheahan.

While the record does not contain the reasons, if any,
given by the court at the time of entering judgment
*non obstante*, the discussion between court and counsel
during the progress of the trial indicates that the court
decided, as contended by defendant's counsel, that re-
covery could not be sustained because "the whole thing
is a gambling transaction."

To this we cannot agree. By the record McClure
had no interest in or connection with the illegal con-
tract itself, between Sheahan and John Doe. He was
as to it a disinterested third party, with no concern
whether it was enforceable between the contracting
parties. There was nothing unlawful in his bailment,
or agency in receiving the money for Sheahan. Act-
ing in that capacity, he cannot as against his principal
set up the illegality of an executed contract to which
he was a stranger. John Doe, the obligor who might
have urged it, waived the illegality and consummated
the transaction by paying his debt as and where he
had promised. In Sheahan's absence from his place of
business, McClure, as his agent in charge, received the
money for him, paid in liquidation of John Doe's debt
to Sheahan. He thereby accepted and assumed the

trust which such capacity implies, thus giving rise to an implied new contract of agency and a demand due from him to Sheahan, not as between them vitiated by the illegal contract between Sheahan and John Doe, to which McClure was not a party.

In *Floyd* v. *Patterson,* 72 Tex. 202 (10 S. W. 526, 13 Am. St. Rep. 787), the controlling principle is thus stated:

"But if the transaction has been completed and another grows out of it collateral to it, dependent upon a new consideration, the new contract is not vitiated by the taint of the old one, and will be enforced. 'It has been observed that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case.' *Gilliam, Ex'r,* v. *Brown,* 43 Miss. 641, citing *Simpson* v. *Bloss,* 7 Taunt. 246; *Roby* v. *West,* 4 N. H. 290 (17 Am. Dec. 423). It is accordingly held that when one as agent of another has received money growing out of an illegal contract he can be made to pay it over at the suit of his principal."

Applying this test to the stipulated facts quoted, plaintiff requires no aid from the illegal transaction to establish her case. In *O'Bryan* v. *Fitzgerald,* 48 Ark. 487 (3 S. W. 527), it was held that a principal may recover money collected by his agent for him upon an executed illegal transaction, in an action for money had and received.

"And again, if parties to an illegal contract waive the illegality, and honestly account between themselves, no other person can be heard to complain of such accounting. Hence we think that if, in making such settlement, one of the guilty parties should deliver property or money to an agent of another to be delivered by the agent to his principal, such agent is bound to account therefor to his principal." *Norton* v. *Blinn,* 39 Ohio St. 145.

Even if an intermediate stakeholder, which he was

not, the defense McClure sought to make here is not open to him. The following from 20 Cyc. p. 950, concisely states the settled law upon the propositions presented by this case:

"When a wagering contract has been executed and its fruits paid to the agent or partner of the winner, the recipient of the fund cannot shield himself by setting up the vice of the original transaction. Neither is it any affair of a bailee of such money or property that the parties have been gambling or intend to gamble; the invalidity of their proceedings does not affect his contract as bailee."

Amongst the authorities cited to support this doctrine is the early case of *Willson* v. *Owen*, 30 Mich 474, in which this court, through Justice COOLEY, made plain that the general rule under which courts refuse to enforce an illegal contract between the contracting parties does not apply to third parties who have no interest in or connection with the illegal contract itself. With citation of earlier authorities pointing out the distinction, it is there said, in part:

"It is true that the trials of speed for money at the horse fair, and the selling of pools under the auspices of the association, were illegal; but there is no illegality in the promise, express or implied, of the defendant to pay over to the plaintiffs the moneys received for them from whatever source derived, or from whatever transactions springing. In *Bronson Agricultural, etc., Ass'n* v. *Ramsdell*, 24 Mich. 441, the attempt was made to enforce the illegal contract by a suit to recover the moneys promised by it; but this suit involves no such attempt. The illegality of this association only appears incidentally in explaining whence the moneys were received; but the grounds of recovery is that the moneys were received for the plaintiffs, and it is not material how or on what account they came to his hands, if in fact for the plaintiffs' use."

Defendant's claimed partnership participation in the illegal transaction not being sustained, his defense has no foundation in fact or law and cannot be sustained.

It follows that the judgment *non obstante veredicto* appealed from must be reversed, with costs. The case is hereby remanded, with directions to set the same aside 'and enter judgment upon the verdict as rendered.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.