[No. 19372. Department Two. November 23, 1925.]

CENTRAL LABOR COUNCIL OF TACOMA, *Respondent*, v.
R. A.. B. YOUNG *et al., Appellants*.[1]

CONTRACTS (54)—LEGALITY OF OBJECT—FURTHER OR SUBSEQUENT
AGREEMENT. The illegality of a contract for the sale of coupon
tickets entitling purchasers to chances on prizes and constituting
a lottery, is no defense to an action to recover from one of the
parties involved a share of the proceeds, where the parties met
and determined the amount due, defendant agreeing to pay his
associates a certain sum in final settlement.

Appeal from a judgment of the superior court for
Pierce county, Wright, J., entered September 10, 1925,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court. Affirmed.

*E. K. Murray, Browder Brown,* and *J. W. A. Nichols,*
for appellants.

*Homer T. Bone,* for respondent.

MACKINTOSH, J.—The respondent and appellants en-
tered into contract looking to the holding of a Labor
Day celebration. The contract provided for the sale
of coupon tickets entitling purchasers to chances on
prizes. It may be taken as being conceded that the
contract was invalid as violative of Art. I, § 24, of the
state constitution, and Rem. Comp. Stat., § 2464, in
that it provided for the holding of a lottery. After
the celebration on September 5, 1921, the respondent
and appellants met for the purpose of settling up their
affairs, and a final accounting was reached whereby it
was determined and agreed that the appellants were
then indebted to the respondent in the sum of $316.26,
the respondent agreeing to accept that sum in full set-
tlement, and the appellants agreeing to pay it. The

[1]Reported in 240 Pac. 919.

amount not having been paid, this action was begun to recover it. And from a judgment in respondent's favor, this appeal has been taken, based upon the appellants' contention that the contract having been illegal, no action could be maintained thereon, even though that action may be in the nature of an action on an account stated.

It is true that some courts have held that, even a new and independent promise to pay will not be enforced where the original contract was tainted with illegality, and even though it had been fully executed. *Murphey v. Springs & Co.*, 200 Fed. 372. But this court long ago committed itself to a contrary doctrine, and has established the rule that, where an illegal contract has been fully performed, the illegality is no defense to an action brought upon a subsequent promise to pay over the balance in the hands of one of the parties to the original contract.

In *McDonald v. Lund,* 13 Wash. 412, 43 Pac. 348, a gambling game had been conducted by two men. After the game had been closed, an agreement was reached as to the division of the profits, which were then in the hands of one of the partners. The court allowed a recovery for the reason that the illegal contract had been terminated and it was not called upon to decide an action as between gamblers, but only to render a judgment against one for an amount which they had mutually agreed on after the partnership had been terminated. The court agreed with the appellant's contention that it was not an attempt to enforce an illegal contract, the illegal contract having been fully executed, but was an action on a new, independent and implied contract which the appellant would not be precluded from enforcing. The opinion in that case reviews many authorities upon the question under consideration, and says:

''The transaction that is alleged to be illegal here,—that is, the carrying on of games of chance,—is completed and closed, and cannot in any manner be affected by what the court is asked to do between the parties to this action.

"Again, this is not a case to enforce any illegal contract, but it is to assert title to money which was accumulated under such illegal contract. If the plaintiff here had brought an action against the defendant for not complying with his contract in running these games, of course it would fall within the rule claimed by the respondent, but here the real contract on which he sues, it seems to us, is a contract of deposit. Under the stipulated facts the illegal transaction which these parties had agreed to pursue had ended. The partnership for that purpose was no longer in existence. The business was no longer being carried on. A determination of the amount of money due from the defendant to the plaintiff had been reached. It was agreed that the defendant owed the plaintiff the sum of money sued for, and that he was entitled to that amount, and the plaintiff's portion was simply left with the defendant on deposit. It is true that it was not segregated from the money belonging to the defendant and the other partner, but that would have been a purely physical transaction which could not have affected the result in any way, and it would have made no difference in the right or wrong of the case whether the money had been actually counted out to the plaintiff and then deposited with the defendant, or, when the amount that was due the plaintiff was agreed upon, he had deposited it without such physical segregation. . . .

"In the case at bar it is conceded by the statement of facts that the defendant has in hand a thing of value that belongs to plaintiff. It certainly does not belong to defendant, and he has no right, either moral or legal, to keep it. If the question were between the plaintiff and the parties from whom this money was obtained, of course another principle would intervene, but to allow a depositary of a person's money to refuse to turn it over to him because the owner of the money

had violated some law in obtaining it would be little short of encouraging robbery."

The same doctrine was subsequently announced in the cases of *Standard Furniture Co. v. Van Alstine,* 31 Wash, 499, 72 Pac. 119, *Stirtan v. Blethen,* 79 Wash. 10, 139 Pac. 618, 51 L. R. A. (N. S.) 623, and *Daniel v. Daniel,* 116 Wash. 82, 198 Pac. 728.

This is a rule which has also been adopted by the supreme court of the United States, as appears in the opinion in *Planters' Bank v. Union Bank,* 16 Wall. (U. S.) 483, a portion of which reads as follows:

"Such a contract would have been illegal. But when the illegal transaction has been consummated; when no court has been called upon to give aid to it; when the proceeds of the sale have been actually received, and received in that which the law recognizes as having had value; and when they have been carried to the credit of the plaintiffs, the case is different. The court is there not asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case. It is enough that the defendants have in hand a thing of value that belongs to them. Some of the authorities show that, though an illegal contract will not be executed, yet, when it has been executed by the parties themselves, and the illegal object of it has been accomplished, the money or thing which was the price of it may be a legal consideration between the parties for a promise, express or implied, and the court will not unravel the transaction to discover its origin."

By virtue of this rule, the respondent is entitled to maintain this action and to recover judgment.

Affirmed.

TOLMAN, C. J., PARKER, and MAIN, JJ., concur.