[No. 22385. Department Two. September 30, 1930.]

H. B. MILLER, *Appellant*, v. R. D. MYERS *et al.*,
*Respondents.*[1]

*Williamson & Laberge,* for appellant.
*Bonsted & Nichoson,* for respondents.

MAIN, J.—This action is based upon a promissory note. The cause was tried to the court without a jury, and resulted in findings of fact from which the court concluded that there could be no recovery. Judgment was entered in accordance with the findings and conclusions, from which the plaintiff appeals.

The facts essential to be stated are these: The Gang Miller Produce Company was a corporation, organized under the laws of this state, with its principal place of business in Yakima county. It was capitalized for the sum of $50,000, and the capital stock was divided into five hundred shares of the par value of $100 per share. June 27, 1923, and prior thereto, H. B. Miller, the appellant, was the owner of seventy-five shares of the

[1]Reported in 291 Pac. 1115.

capital stock of the corporation. The balance of the stock was owned by George Gang and R. D. Myers. The stockholders mentioned were the three trustees or directors. Miller was secretary and treasurer, and Gang president of the corporation.

On the date mentioned, Miller, Gang and Myers entered into an agreement by which the latter two were to purchase Miller's stock for the sum of $7,000. The money to pay for the stock was to be obtained by mortgaging property of the corporation. The corporation borrowed $7,000 from another corporation, of which Miller was president, and gave a mortgage upon its property to secure the same. The money was deposited in the bank to the credit of the Gang Miller corporation, and was afterwards paid over to Miller by two checks drawn in his favor and signed by the corporation, and these checks, in due course, were paid. Myers gave his note to the Gang Miller Produce Company to pay for his portion of the stock, in the sum of $4,266.60, which note was dated July 9, 1923, and was due five years after date, and Gang gave a similar note to pay for his share of the stock. The Miller stock was transferred on the books of the corporation to Gang and Myers, in the respective amounts to which they were entitled. At the time of this transaction, and for some time prior thereto, the Gang Miller Produce Company was insolvent and did not have sufficient assets to pay its debts. Myers was insolvent, and Gang's financial standing was questionable. The insolvency of the corporation was known to all the parties to the transaction.

March 21, 1924, the Gang Miller Produce Company filed its petition in voluntary bankruptcy in the United States district court for the eastern district of this state, and was therein adjudged a bankrupt. The

trustee in bankruptcy subsequently brought an action against Miller for the $7,000, which he had received of the corporate assets, together with interest. Miller paid the judgment, and the trustee in bankruptcy indorsed, without recourse, the Myers note, and delivered it to him. This is the note which is the subject of the present action.

Whether appellant, Miller, can recover in this case depends upon whether the note sued upon was so intimately connected with an illegal transaction or one that was against public policy, to which Miller was a party, as to be a part thereof.

Section 3823, Rem. Comp. Stat., provides that it shall not be lawful for the trustees of a corporation to make any dividend except from the net profits arising from the business of the corporation, nor divide, withdraw or in any manner pay to the stockholders, or any of them, any part of the capital stock of the company.

There can be no question but what the manner in which the money was to be acquired to pay for the Miller stock was illegal and against public policy. It is a settled rule that no action can be based upon an illegal contract or one that is against public policy by a party *in pari delicto*. In *Harriman v. Northern Securities Co.,* 197 U. S. 244, it is said:

"And this in defiance of the settled rule that property delivered under an illegal contract cannot be recovered back by any party in pari delicto."

That Miller was *in pari delicto* with the purchasers of his stock, is apparent from the facts above stated.

The fact that the corporation might have recovered upon the note, even though it was *in pari delicto,* does not aid Miller, because, while there is a dominant public policy in favor of the corporation being permitted to recover, as was pointed out in *Duddy-Robinson Co.*

*v. Taylor,* 137 Wash. 304, 242 Pac. 21, there is no dominant public policy in favor of Miller recovering.

In the case of *Tate v. Gould,* 175 Ark. 306, 299 S. W. 24, Gould, the plaintiff, and the two Tates, the defendants, entered into an adventure for the purpose of dealing in road improvement and other improvement district bonds in the state of Arkansas. The parties, in some instances, made their profits in dealing in road bonds by entering into agreements with other bond brokers for the suppression of competitive bidding. Gould indorsed a note for the Tates, which was to be paid out of the profits of the transaction, and subsequently brought an action thereon. It was there held that, the contract being void as against public policy, no recovery could be had. In the course of the opinion, it was said:

"Be that as it may, it is fairly inferable from the evidence in the case that Gould indorsed the notes of the Tates because they were associated together in the purchase and sale of Arkansas road and other improvement district bonds, and it was contemplated that he should be reimbursed or paid for signing these notes out of any proceeds arising from the sale of the bonds in which the parties were jointly interested which might come into his hands. . . . Thus it will be seen that his indorsement of the notes was a matter growing out of their joint adventure in dealing in Arkansas road and other improvement district bonds. It does not matter what the Tates used the money for. That was not the question. We are only concerned with the question of whether or not his indorsement of the notes was a part of their joint adventure in dealing in Arkansas improvement district bonds, and, for the reasons above given, we are convinced that it grew out of, and was a part of, such transactions. In this view of the matter it does not make any difference that Gould brought suit at law. An illegal contract can no more be enforced at law than in equity."

That case is closely analogous to the case now before us, and the underlying principle is the same. There Gould indorsed a note, which was to be paid out of funds which were derived from an illegal transaction, or one that was against public policy. Here Miller is seeking to recover upon a note, which was given as the result of an illegal transaction, or one that was against public policy, to which he was a party. We know of no principle of law or adjudicated case that would sustain Miller's right to recover upon the note sued upon.

The case of *National Surety Co. v. Bankers' Trust Co.*, 228 N. W. (Iowa) 635, is not in point. There the plaintiff surety company guaranteed the Des Moines Life & Annuity Company against loss by reason of fraud, dishonesty or forgery of its employees. Subsequently one of the employees forged drafts payable to the life and annuity company, and the defendant bank, by which they were issued, paid them. The surety company paid the life and annuity company the amount of its loss, took an assignment of the forged drafts, and brought suit against the bank. It was there held that there could be a recovery. The surety company was in no sense *in pari delicto* with the employee of the life and annuity company who forged the drafts.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, HOLCOMB, and BEALS, JJ., concur.