ELWOOD A. WARNER, DBA NEVADA SHEET METAL SHOP AND GEORGE COLFER, APPELLANTS, *v.* SEABOARD FINANCE COMPANY, A DELAWARE CORPORATION, QUALIFIED TO DO BUSINESS IN THE STATE OF NEVADA, RESPONDENT.

No. 4195

November 10, 1959                                    345 P.2d 759

*Frank R. Petersen,* of Reno, for Appellants.

*Springer, McKissick & Hug,* of Reno, for Respondent.

# OPINION

By the Court, BADT, J.:

Appellants have appealed from a judgment in favor of respondent growing out of a contract designated "Home Modernization Dealer Agreement." Appellants are hereinafter referred to as Nevada Sheet Metal and respondent is referred to as Seaboard.

Nevada Sheet Metal, under the written contract, referred to by counsel as the master agreement, sold to Seaboard a contract entered into between Nevada Sheet Metal and Kenneth M. Stone and Norma Stone for the installation of a metal storm door, windows, and awnings. The amount of the sale from Nevada Sheet Metal to Stone was $918. This however was made payable in 36 consecutive monthly installments of $33.15 each, which aggregated $1,193.40 under the installment contract. Stone having repudiated the contract and having refused to make payments for the reasons hereinafter discussed, Seaboard commenced the action against Nevada Sheet Metal for the recovery of $918, its advance under the Stone contract, and $496.74, its advance under a second contract referred to as the Vernon contract, together with interest, costs, and a reasonable attorney fee. We first devote our attention to the Stone contract.

The master contract was executed in consideration of Seaboard's purchase of the Stone and Vernon contracts and pursuant to Nevada Sheet Metal's desire to sell to Seaboard sundry other notes, purchase money contracts, sales agreements, etc. The sale and assignment to Seaboard was first stated to be without recourse. It then

recited a number of agreements and warranties on the part of Nevada Sheet Metal and provided that in the event of the breach by the latter of any of its warranties with reference to modernization contracts entered into by it, Seaboard's waiver of recourse against Nevada Sheet Metal was abrogated, whereupon Nevada Sheet Metal unconditionally guaranteed the full performance of all of the terms and conditions of such contracts.

Among others, Nevada Sheet Metal warranted (1) that all of its contracts would be valid and enforceable deferred payment obligations in accordance with the terms of the contracts with the respective purchasers; (2) that each of such contracts would be free from setoff or counterclaim of any nature; (3) that each of such contracts had been or would be made in good faith and actually signed by the purchasers therein named; (4) that the property sold would not be defective in any particular. Nevada Sheet Metal further covenanted: "I (We) understand that I (we) are fully responsible for the Home Modernization activity of all sales personnel, that ethical and proper selling practice will be followed, and that immediate attention will be given all complaints involving materials, workmanship, or sales representations."

Asserting false and fraudulent representations and defective materials and workmanship, Stone refused to make payments to Seaboard on the assigned contract, and Seaboard thereupon sought by its demand upon Nevada Sheet Metal and its subsequent suit against Nevada Sheet Metal its recourse against the latter.

Its complaint alleged that in violation of its responsibility for all sales personnel and for the following of ethical and proper selling practices, Nevada Sheet Metal's salesmen made false and fraudulent sales representations, in that they told Stone that, because of his dynamic appearance and personality, if they were allowed to place certain improvements on his house, including storm doors, storm windows and awnings, and if he would appear on a weekly television show in a testimonial capacity, and would permit the home to be displayed as a model home, that no payments would be

expected under the contract and that the installation would be made in consideration of the use of Stone's premises as a model home and for television appearances.

Seaboard further asserted a violation of the warranty that the contract would be valid and enforceable and that it had been made in good faith, as the salesmen perpetrated a fraud upon the Stones and induced them to sign the installment contract in blank, without any recital of any sums payable under it, and upon the representation that it was merely an authorization to proceed and a receipt for the delivery of materials and an acknowledgment of the completion of the improvements, all of which were necessary to support a requisition for delivery of the materials; that Nevada Sheet Metal had further violated the warranty that the property would not have been misrepresented to the purchaser; and that the property installed was defective in many particulars and the workmanship unsatisfactory.

These and other allegations of breach were denied by Nevada Sheet Metal and the case went to trial upon the issues thus made. Stone and his wife, corroborated by other witnesses, testified to the representations made by Nevada Sheet Metal salesmen and as to the nature of the work done, and the court, trying the case without a jury, filed a written opinion stating that the evidence clearly showed that the activities of Nevada Sheet Metal salesmen violated the terms and conditions of the master dealer agreement, and that the Stones thought they were signing simply an authorization to proceed with the work. Formal findings of fact followed to the effect that agents of Nevada Sheet Metal made misrepresentations and false sales statements in violation of the master dealer's contract; that Nevada Sheet Metal was liable and responsible therefor, and that as a result Nevada Sheet Metal had failed to perform the warranties and guaranties of the master dealer's contract and had breached said contract to plaintiff's damage. Separate findings were made with reference to the Stone contract and with reference to the Vernon contract. The court concluded that recourse against Nevada Sheet Metal was justified. Entry of judgment followed in the sum of $918

on the former, $496.74 on the latter, and for interest, costs, and attorney fees.

As assignments of error in support of this appeal, Nevada Sheet Metal asserts insufficiency of the evidence to support the findings above outlined. We find no support for this assignment. Although the evidence is conflicting in some respects and although the testimony of plaintiff's witnesses was to some extent weakened on cross-examination, there is ample substantial evidence in the record to sustain the findings. The learned trial judge apparently gave full credence to the testimony of Mr. and Mrs. Stone and other corroborating testimony. To rehearse such testimony in detail would add nothing to this opinion.

Appellants' briefs are devoted almost entirely to questions of agency and to the contention that the sales agents of Nevada Sheet Metal were not only without actual authority to make the representations charged to them but were without any apparent or ostensible authority to make such representations; that such representations were so unusual and so remarkable as to have put the purchasers on their guard and made it their duty to inquire as to the sales agents' authority and good faith and to discover at their own peril whether the principal had authorized the representations made. We need not pursue the subject. Nevada Sheet Metal, by the express terms of the master contract, accepted full responsibility for the activity of all sales personnel and full responsibility that ethical and proper selling practices would be followed, and that immediate attention would be given to all complaints involving sales representations. Under the facts as found by the court, with ample support for the findings, Seaboard was justified, upon repudiation of the contract by the Stones, to seek recourse from Nevada Sheet Metal.

What we have said with regard to Nevada Sheet Metal's contract with Stone, applies a fortiori to its contract with Vernon.

The judgment is affirmed with costs.

MCNAMEE, C. J., and PIKE, J., concur.