[No. 35150. Department Two. June 9, 1960.]

O. A. BROWER et al., *Respondents*, v. O. K. JOHNSON, *Appellant*.

O. K. JOHNSON, *Appellant*, v. O. A. BROWER et al., *Respondents*.[1]

[1]Reported in 352 P. (2d) 814.

*Ernest M. Ingram* and *James M. Stewart,* for appellant.
*John E. Close* and *John H. Kirkwood,* for respondents.

FINLEY, J.—This is a consolidated action wherein the parties are seeking an adjudication of their rights under a partnership agreement. The appellant seeks dissolution of the partnership, and distribution to him of his claimed share of the net assets. The respondents, who are the remaining partners under the agreement, seek to enforce by injunction a covenant not to compete, which was contained in the partnership agreement; and to recover damages for alleged breach of this covenant. Initially, the partnership, known as Grays Harbor Amusement Company, was formed by a written agreement entered into in July 1947 by the parties, and by one Otis Morehead (now deceased). Under the written agreement, the partnership was to continue for a term of ten years, unless sooner dissolved by those partners holding a majority of the voting interests. In July 1957, upon expiration of the written agreement, the parties agreed orally to continue in business under the terms of the 1947 agreement, with certain immaterial modifications.

From time to time, both before and after expiration of the written agreement, certain disagreements arose between

the appellant and the remaining partners, finally culminating in the commencement of this litigation by the appellant on August 28, 1958. Predicated upon allegations of improper use of partnership funds by the respondent Brower, breach of the partnership agreement by the majority partners, and expiration of the term of the partnership, the appellant sought dissolution, and distribution to him of the sum of thirty thousand dollars, or twelve per cent of the total net assets, whichever was the greater. At about the same time, the appellant commenced to operate the Victory Amusement Company in competition with the remaining partners. In response to this, the remaining partners, the respondents herein, sued to enforce the covenant not to compete, as above noted. Prior to trial, the two actions were consolidated by order of the trial court.

Initially, the appellant, both in seeking dissolution of the partnership and as a defense in the respondents' action to enforce the covenant not to compete (which, under the written agreement, was expressly limited in time to the term of the partnership), placed his primary reliance on two theories: (1) that the partnership should be dissolved because of the alleged violations of the agreement by the respondents; and (2) that the oral agreement of July 1957 was void under that portion of the Washington statute of frauds (RCW 19.36.010) operative relative to ". . . Every agreement that by its terms is not to be performed in one year from the making thereof; . . ." However, near the close of the trial, the appellant for the first time urged that the partnership agreement was unenforcible for the reason that the business of the Grays Harbor Amusement Company was illegal in that it consisted primarily of the unlawful operation of gambling devices, namely, pinball machines. The trial judge first allowed the appellant, under a trial amendment to his pleadings, to testify in support of this claim; but later, upon a motion by the respondents, the judge reversed his ruling allowing an amendment to the pleadings, and struck all evidence as to illegality. He then entered findings and conclusions to the effect that the appellant's claim of misuse of partnership funds and

breach of the partnership agreement was unsupported by the evidence, and that the appellant was estopped to assert in his favor the pertinent portion of the statute of frauds. He accordingly denied appellant's motion for a new trial and entered judgment dismissing appellant's suit for dissolution and granting the respondents' prayer for injunction and damages.

Under our view of the case, it is not necessary at this time to consider the correctness of these latter findings and conclusions upon which the judgment appealed from was predicated for the reason that, in our opinion, the trial judge's disposition of the appellant's evidence of illegality constituted error, and necessitates the remanding of this case for a new trial. Specifically, in support of his claim that the primary business of the partnership was the operation of gambling devices, appellant's testimony was that about sixty per cent of the income of the partnership was derived from the operation of pinball machines. He further testified that this income came from a profit-splitting arrangement between the partnership which owned the pinball machines and the proprietors of various taverns, cafes, and other like locations in which the machines were placed. Finally, appellant testified that, although the machines did not contain an automatic pay-off device, they did contain a numbering device or meter. This meter indicated the number of "free games" won by a person playing the machines, and on this basis "over the counter" pay-off was made in each instance by the proprietors of the establishments in which the machines were placed. Appellant's own function in the operation was to secure locations for the placing of the machines and to collect the partnership's share of the *"take"* from the machines.

It is obvious that the respondents' right to avoid dissolution of the partnership and to restrain competition by the appellant is dependent upon the existence of a valid partnership under an enforcible partnership agreement. As previously noted, the appellant's covenant not to compete was expressly limited in time to the term of the partnership. The consequences resulting from the fact that the

business carried on by a partnership is illegal appear to be twofold. First, a partnership is dissolved "By any event which makes it unlawful for the business of the partnership to be carried on or for the members to carry it on in partnership; . . ." RCW 25.04.310(3). Second, according to the great weight of authority, if the business of a partnership is illegal, the courts will not entertain an action for the distribution of assets. See 40 Am. Jur., Partnerships, § 30; Crane on Partnerships (2d. ed.), § 21 (1952). Respecting the latter consequence, the Montana supreme court, in *Morrison v. Bennett* (1898), 20 Mont. 560, 52 Pac. 553, said:

" . . . Men who associate themselves for the purpose of cheating others cannot ask the courts to distribute their booty by adjudging the demands of one against the other, arising out of their quarrels over their plunder. . . ."

Concededly, we have announced a rule somewhat qualifying the view expressed by the Montana court, holding that an independent agreement for the distribution of the profits of an illegal business, made after the basic agreement for the carrying on of that business has been fully executed, will be enforced. *Central Labor Council of Tacoma v. Young* (1925), 136 Wash. 550, 240 Pac. 919; *McDonald v. Lund* (1896), 13 Wash. 412, 43 Pac. 348. However, in the instant case the basic agreement has not been fully executed, as is evident from the fact that the primary question before this court is the enforcibility of that agreement.

Applying the consequences of illegality, above noted, to the matter of determining the rights of the parties in the case before us, it follows that, if the business of the Grays Harbor Amusement Company is illegal, (1) the appellant is not entitled to a distribution of assets (in conformity with the ruling of the trial court on other grounds, as earlier related); and (2) the respondents may not enforce the covenant not to compete, for the reason that the partnership, upon whose continued valid existence enforcibility of the covenant is dependent, is dissolved.

A reading of the trial judge's oral ruling, denying the appellant's motion for an amendment to the pleadings and granting the respondents' motion to strike all evidence as

to illegal activities or business, discloses that he was motivated by (1) a doubt as to whether the pinball machines in question were gambling devices, in view of the evidence that winnings were "paid off" *over the counter* rather than automatically by the machines; (2) a belief that the appellant's failure to plead illegality in the first instance could not be cured by a trial amendment; and (3) a determination that public policy should preclude the appellant—who in all probability would be operating in much the same manner as the respondents, unless the injunction sought by the respondents was granted—from escaping the injunction, because of the illegal nature of the respondents' business.

Taking these considerations in inverse order, we are of the opinion, first, that the nature of the business in which the appellant may engage if not otherwise enjoined may be of significance in some legal contexts; but such considerations have no bearing upon the enforcibility of the covenant not to compete, contained in the partnership agreement upon which the respondents rely. Enforcibility of the covenant, by its express terms, is dependent solely upon the continued existence of the Grays Harbor Amusement Company as a valid partnership. Second, illegality, if of a serious nature (and it should be noted that, under RCW 9.47.010, the operation of a gambling game or device is a felony punishable by imprisonment in the state penitentiary for not more than five years), does not need to be pleaded at all. If illegality appears in evidence, the court will of its own motion deny relief to the plaintiff. Restatement, Contracts, § 600, Comment a, quoted with approval in *Sinnar v. LeRoy* (1954), 44 Wn. (2d) 728, 270 P. (2d) 800. Finally, it is true that, in *Miller v. Spokane* (1949), 35 Wn. (2d) 113, 211 P. (2d) 165, wherein we held that pinball machines are gambling devices within the meaning of RCW 9.47.030, the machines appear to have contained an automatic payoff device. However, in deciding the *Miller* case, we relied principally upon the decision of the Montana court in *State ex rel. Dussault v. Kilburn* (1941), 111 Mont. 400, 109 P. (2d) 1113, 135 A. L. R. 99, in which to the fortunate winner the machines gave forth trade checks, which

were exchanged for cash by the proprietor of the establishment in which the pinball machines were located. It is clear, therefore, that it is the fact of a *pay-off*, and not the method whereby the pay-off is made, that is crucial. We have no hesitancy in holding that, if the appellant's testimony respecting the pinball machine operation engaged in by the Grays Harbor Amusement Company is true, then the business of that partnership is clearly illegal.

In view of the conclusions we have reached, this case should be remanded for a new trial. Appellant's evidence as to the purported illegality of the activities or business of the respondents should be admitted, with an opportunity for respondents to rebut such evidence. If the appellant's evidence is not rebutted, or, if in any event the trial judge finds from all the evidence that, under the test set forth in this opinion, the primary business of the partnership is illegal, both suits included in this consolidated action should be dismissed. (Costs will abide the final result.) It is so ordered.

WEAVER, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.

August 10, 1960. Petition for rehearing denied.