[No. 108-40591-1.   Division One.   May 18, 1970.]
Panel 1

SHERWOOD & ROBERTS-YAKIMA, INC., et al., *Appellants*, v.
MILTON COHAN et al., *Respondents*.

*Davis, Wright, Todd, Riese & Jones* and *Daniel B. Ritter*,
for appellants.

*Monheimer, Schermer, Van Fredenberg & Smith* and
*John M. Schermer*, for respondents.

704

SWANSON, J.—When *Sherwood & Roberts-Yakima, Inc.,
v. Leach,* 67 Wn.2d 630, 409 P.2d 160 (1965),[1] decided that
the referral sale scheme conducted by Lifetone Electronics,
Inc., to sell Leach a home fire alarm and radio intercommu-
nications system was a lottery and illegal, all of the condi-
tional sale contracts purchased by Sherwood & Roberts-
Yakima, Inc., and Fairway Finance-Pasco, Inc.,[2] from
Lifetone[3] became worthless.

Sherwood & Roberts then sued Lifetone and its promot-
ers for breach of their agreements warranting the assigned
contracts to be valid and enforceable. Lifetone asserts a
defense of illegality and claims the warranties are there-
fore unenforceable. The trial court agreed, and this appeal
follows.

Lifetone is a Seattle based corporation engaged in selling

---

[1]The court, in *Sherwood & Roberts-Yakima, Inc., v. Leach, supra,*
stated at 636:

Since the referral selling agreement is contrary to the terms and
policy of RCW 9.59.010, it is illegal and unenforceable [citations];
and when an instrument is intimately connected with an illegal one,
the former becomes tainted with that illegality and is likewise
unenforceable. [Citations.]

Here, the referral agreement and the conditional sale contract
were all part of one transaction. The Lifetone salesman represented
to respondents [Leach] that the conditional sale contract obligation
would easily be paid from "commissions earned" from the referral
selling agreement, and Mr. Leach so intended to pay the conditional
sale contract. It is clear respondents would have a good defense
against Lifetone. It also appears that they have a good defense
against appellant. [Sherwood & Roberts-Yakima, Inc.] The appel-
lant, as assignee of a conditional sale contract, takes the contract
subject to all defenses. [Citations.]

[2]Appellants, Sherwood & Roberts-Yakima, Inc., and Fairway Fi-
nance-Pasco, Inc., will be referred to in this opinion as "Sherwood &
Roberts." They are Washington corporations doing business in Yakima
and the Tri-Cities, respectively. Both appellants are subsidiaries of
Sherwood & Roberts, Inc., which has its headquarters in Walla Walla,
Washington.

[3]Lifetone Electronics, Inc., is referred to in this opinion as "Life-
tone." The other respondents are the men who promoted Lifetone and
the promoters' wives. Each of these men is an officer, a director, and a
stockholder of Lifetone, and among themselves they own all the out-
standing stock, hold all the offices, and comprise the entire board of
directors of Lifetone.

home radio intercommunication and fire alarm systems. In the spring of 1963, it decided to expand its activities into the Yakima and Tri-Cities areas of Eastern Washington. It contemplated making sales on conditional sale contracts and needed a financial outlet through which to sell its contracts for cash. Lifetone contacted Sherwood & Roberts and revealed its plan of referral selling as described in *Sherwood & Roberts-Yakima, Inc. v. Leach, supra* at 632:

> The consumer would purchase a radio intercom and fire alarm system on a conditional sale contract. As part of the transaction, a representative's commission agreement would be executed. By this, the consumer would furnish Lifetone a list of prospective purchasers. For each sale to any one so referred, the consumer would receive a commission of $100. A bonus guarantee would also be executed. By this if Lifetone made sales presentations to 15 of a consumer's referrals without a sale being made, the consumer would receive $200.

Sherwood & Roberts agreed to buy Lifetone's contracts, pursuant to financing requirements which included a dealer agreement warranting a bona fide sales transaction and containing a covenant that any referral sales program "will be conducted only as a proper single referral basis, . . ."[4] Lifetone assigned contracts having a total unpaid

---

[4]The dealer agreements, exhibit 10 dated July 30, 1963, and exhibits 4 and 5 dated August 23, 1963, between Lifetone as dealer, and the appellants Sherwood & Roberts-Yakima, Inc., and Fairway Finance-Pasco, Inc., as finance companies, all provided in part as follows:

Contracts purchased hereunder shall be on a non-recourse basis, provided that, whether expressed in the assignment or not, Dealer warrants: a bona fide sales transaction, genuineness of signatures, completion of installation, correctness of installation, and delivery dates shown, accuracy of real property description, and that Dealer will perform any duties under applicable sales warranties to the end that breach of warranty claims will not reduce contract payments under contracts purchased.

. . .

. . . Dealer covenants that any referral compensation program which it may undertake will be conducted only as a proper single referral basis, will be performed by Dealer as its retained and continuing obligation to the purchaser, and that Dealer indemnifies and holds harmless the Finance Company as to any and all referral payments and obligations thereunder.

balance of $99,415.76,[5] and warranted each contract to be valid, genuine, and enforceable.[6] The individual promoters of Lifetone guaranteed personally the accuracy of warranties from Lifetone to Sherwood & Roberts.[7] The referral selling program was established and conducted by Lifetone, and Sherwood & Roberts did not participate in the conduct of that program. In their dealings with each other, the parties acted in good faith and did not know that the referral selling scheme was illegal.[8]

The parties stipulated that as a result of *Leach,* all of the contracts assigned by Lifetone to Sherwood & Roberts are unenforceable. After Sherwood & Roberts presented their evidence and rested, respondents challenged the sufficiency of the evidence and asked the trial court either to treat the appellants' evidence as true and rule as a matter of law, as

---

[5]This amount includes finance charges over a 3-year period and includes the sum of $49,833.23 which represents the balance owing on contracts which were assigned to Sherwood & Roberts-Yakima, Inc., before August 23, 1963, the date when the individual respondents signed the guarantee set forth in n.7.

[6]Each assignment used by Lifetone contained the following language:

I warrant that: title to said property is in me free and clear, I have the right to make this assignment, the within contract IS GENUINE, VALID AND ENFORCEABLE ACCORDING TO ITS TERMS and arose from a bona fide sale of the said property according to the contract terms, . . .

[7]The personal guarantees executed on August 23, 1963, read as follows:

The undersigned individuals are principals of and interested in Dealer, and in consideration of entry by Finance Company into the foregoing agreement, the undersigned jointly and severally and on behalf of their respective marital communities hereby guarantee the accuracy of warranties and representations from Dealer to Finance Company, further guaranteeing the performance by Dealer of any sale or service warranties to the respective contract purchasers for a minimum period of one year from date of contract, and further covenant to and hereby do indemnify the Finance Company from any and all loss, cost, charge or expense arising from or connected with said warranties or representations.

[8]The trial court's finding of fact 8 states in part: "The parties were in good faith in that they did not know they were violating the law."

in a jury case, or rule as a matter of fact after weighing the evidence. The trial court chose the second approach and ruled that Sherwood & Roberts' evidence established facts that prevent them from recovering.[9] As is required in ruling on a motion to dismiss after weighing the evidence, the trial court made findings of fact and conclusions of law and entered a judgment of dismissal.

Appellants' first three assignments of error are directed to the following findings of fact:

First, finding 5:

That the referral sales technique employed by the defendants, with the knowledge and *approval* of the plaintiffs, is *identical* to that which has been declared to be a lottery in violation of RCW 9.59.010 in the case of *Sherwood & Roberts-Yakima, Inc. v. Leach,* 67 Wash. 2d 630.

(Italics ours.) Second, finding 7:

That defendants could not have made sales using the referral selling method *without the financial support of the plaintiffs.*

(Italics ours.) Third, finding 8, in part:

That the plaintiffs were *knowingly* an *integral part* of the referral selling scheme.

(Italics ours.)

■ Appellate review of the findings is limited to ascertaining whether there is substantial evidence to support them. Appellants object to the use of the words italicized and claim they are misleading. There is no evidence to support the statement italicized that Lifetone needed "the financial support of the plaintiffs" in particular. The evidence only indicates that Lifetone needed the financial support of someone in order to conduct its business. Such portion of finding 7 is erroneous. Although more accurate language could have been employed, substantial evidence

---

[9]The right of the trial court to weigh the testimony in a nonjury case on a motion for a nonsuit is well established. *Totem Equip. Co. v. Critchfield Logging Co.,* 62 Wn.2d 175, 381 P.2d 738 (1963); *Jacobs v. Brock,* 66 Wn.2d 873, 406 P.2d 17 (1965); *Richards v. Kuppinger,* 46 Wn.2d 62, 278 P.2d 395 (1955).

exists to support the use of the other words italicized above.

The trial court concluded that the parties were in pari delicto in their transactions with one another and the equipment purchasers. Therefore, said the trial court, Sherwood & Roberts required the aid of an illegal transaction to support their cause of action, and the illegality cannot be severed from the main consideration of the contract between them. Appellants also assign error to these conclusions and to certain proposed findings and conclusions which were rejected. However, appellants' remaining 21 assignments of error will be discussed together, for the determination of this appeal rests on the resolution of this question: Is the illegality of this referral selling scheme, resulting in the assigned contracts' being illegal and unenforceable, a sufficient defense to the assignee's suit claiming a breach of the assignor's warranty that the contracts assigned are genuine, valid, and enforceable?

█ Appellants Sherwood & Roberts place principal reliance upon the warranty agreement contained in each assignment, which states in part:

> I warrant that: . . . the within contract is GENUINE, VALID AND ENFORCEABLE ACCORDING TO ITS TERMS . . .

n.6, *supra,* and on this language of the August 23, 1963, guarantee agreement given by the individual respondents:

> The undersigned . . . guarantee the accuracy of warranties . . ., and further covenant to . . . indemnify the Finance Company [Sherwood & Roberts] from any and all loss, . . . arising from or connected with said warranties . . .

n.7, *supra.* Sherwood & Roberts assert that the warranty of enforceability includes the warranty that the assigned contracts are free from the defense of illegality or, stated conversely, are legal and enforceable. We agree. Lifetone concedes that this kind of warranty has been recognized and upheld, *Warner v. Seaboard Fin. Co.,* 75 Nev. 470, 345 P.2d 759 (1959), but, says respondent, Lifetone only war-

ranted the contracts at the time of the assignment and not into the future until such time as the law is found to be different. This contention has no merit, for even though the trial court found that neither party knew at the time the agreements were made that single stage referral selling was a lottery and illegal, it nevertheless was, as determined by *Leach*, a lottery and illegal. Their ignorance or doubt of this fact does not make it any less a fact.

The warranty that the contracts assigned were "genuine, valid and enforceable," plus the stipulated fact that the contracts assigned were illegal and unenforceable, equals a conclusion of breach of warranty, unless the factor, illegality, should be included in the equation, as Lifetone contends, requiring the result reached by the trial court; namely, leaving the parties where it finds them. If the warranted conditional sale contracts sued upon are illegal or against public policy, they are unenforceable. Whether appellants Sherwood & Roberts can recover in this case depends upon the answers to these two questions: First, whether or not the warranties sued upon were so intimately connected with an illegal transaction, or one that was against public policy, to which Sherwood & Roberts were a party, as to be a part thereof; or, secondly, if it is determined that the warranties were so intimately connected with an illegal transaction, so that the suit is one to enforce an illegal contract, whether or not the parties are in pari delicto. *Sherwood & Roberts, Inc. v. Leach*, 67 Wn.2d 630, 409 P.2d 160 (1965); *Miller v. Myers*, 158 Wash. 643, 291 P. 1115 (1930); Restatement of Contracts §§ 598, 599 (1932).

Taking first the question of the connection of the warranties to the illegal transaction, Lifetone rests its argument upon these conclusions reached by the trial court: (1) The conditional sale contracts are illegal; (2) The assignments to Sherwood & Roberts of these illegal contracts cannot be severed from the illegal transactions; (3) The warranties contained in the assignments are not enforceable, because Sherwood & Roberts must rely upon illegal transactions to

establish the assignments; (4) Since the warranties are not enforceable, the court should leave the parties where it finds them.

Even though not precisely so expressed, these arguments, combined, say that the promises contained in the warranties sued upon cannot be severed from the illegal transaction and, consequently, are unenforceable. In so arguing, respondent Lifetone does not contend that the warranties themselves are illegal. Its argument is directed to the conclusion that the warranties are part of the assignments which cannot be separated from the antecedent illegal transactions.

█ Though variously stated, the authorities are in general agreement that if the promise sued upon is related to an illegal transaction, but is not illegal in and of itself, recovery should not be denied, notwithstanding the related illegal transaction, if the aid of the illegal transaction is not relied upon or required, or if the promise sued upon is remote from or collateral to the illegal transaction, or is supported by independent consideration.[10] Considered together, these various tests form what may be termed the "doctrine of severability."[11] This doctrine finds consistent support in the decisions of the Supreme Court of our state.

---

[10] 6A A. Corbin, Contracts § 1529 at 784 (1962), states:

"There are many bargains, wholly lawful in themselves, that the parties would not have made except for the fact that an antecedent illegal transaction had taken place. A mere causal relation such as this, the bargain not being substantially identical with the illegal transaction and its enforcement not being the consummation of an illegal purpose, is not ground for refusal of enforcement. The illegal transaction is in such cases described as 'collateral' or 'remote.'

This rule is differently stated in 17 C.J.S. Contracts § 276 (1963):

"An agreement will be enforced, even if it is incidentally or indirectly connected with an illegal transaction, provided it is supported by an independent consideration, or if plaintiff will not require the aid of the illegal transaction to make out his case; . . ."

[11] Restatement of Contracts § 597 (1932), states, in part:

"A bargain collaterally and remotely connected with an illegal purpose or act is not rendered illegal thereby if proof of the bargain can be made without relying upon the illegal transaction.

"*Comment*:

"*a.* How closely a bargain must be connected with an illegal

Beginning with *McDonald v. Lund,* 13 Wash. 412, 414, 43 P. 348 (1896), the court said:

It is conceded by the appellant that courts will decline to lend their aid to the enforcement of an executory contract which has for its object the performance of some act or the accomplishment of some end which is contrary to law or a sound public policy, . . . It is insisted, however, by the appellant, that this case does not fall within the rule above conceded, but within one of the limitations of such rule; that the obligation of the respondent in this case was a collateral obligation in a manner connected with or growing out of the illegal transaction, but that it is not an attempt to enforce the illegal contract; that the illegal contract had been fully executed, and that there is a new, independent and implied contract which the plaintiff will not be precluded from enforcing.

Even though the money claimed by the plaintiff in *McDonald* constituted actual proceeds of an illegal contract, involving gambling, between the parties, the recovery was permitted on the ground that the action was not founded upon the illegal contract nor brought to enforce any of its conditions, but on a separate, independent contract.[12] The severability approach was also utilized in *Central Labor Council v. Young,* 136 Wash. 550, 551, 240 P. 919 (1925):

It is true that some courts have held that, even a new and independent promise to pay will not be enforced where the original contract was tainted with illegality,

---

purpose in order to make the bargain itself illegal is a question of degree.

"*b.* Even though a plaintiff's case can be made out without indicating anything unlawful, it may be shown that the bargain is illegal because of facts not brought out in the plaintiff's case, provided that the facts so offered show a close enough connection with an illegal transaction. The line of proximity varies somewhat according to the gravity of the evil apprehended. If the evil is serious a more remote connection with the illegal purpose or act is sufficient to invalidate the bargain than if the evil is slight."

[12]*Cf. Reed v. Johnson,* 27 Wash. 42, 67 P. 381 (1901), where the court did not cite *McDonald v. Lund, supra,* nor discuss any Washington cases, but in accordance with the general rule refused to enforce an illegal contract and grant specific performance, on the ground that the enforcement of such an illegal contract would violate public policy.

and even though it had been fully executed. [Citation.] But this court long ago committed itself to a contrary doctrine, and has established the rule that, where an illegal contract has been fully performed, the illegality is no defense to an action brought upon a subsequent promise to pay over the balance in the hands of one of the parties to the original contract.

*Accord, Wakefield v. Hughes,* 149 Wash. 135, 270 P. 299 (1928). See also *Miller v. Myers,* 158 Wash. 643, 645, 291 P. 1115 (1930), wherein it is stated: ·

Whether appellant, Miller, can recover in this case depends upon whether the note sued upon was so intimately connected with an illegal transaction or one that was against public policy, to which Miller was a party, as to be a part thereof.

*But see Brower v. Johnson,* 56 Wn.2d 321, 352 P.2d 814 (1960).[13]

Our court, in *Den Adel v. Blattman,* 57 Wn.2d 337, 340, 357 P.2d 159 (1960), stated:

The instant case falls within the principle of law announced in *Melton v. United Retail Merchants of Spokane,* 24 Wn. (2d) 145, 161, 163 P. (2d) 619 (1945):

"It is, therefore, apparent that the state of our law governing the matter under discussion is substantially

---

[13]*Brower v. Johnson, supra* at 325, somewhat qualified the rule announced in *Central Labor Council v. Young, supra,* and *McDonald v. Lund, supra,* when the court said:

Concededly, we have announced a rule somewhat qualifying the view expressed by the Montana court, holding that an independent agreement for the distribution of the profits of an illegal business, made after the basic agreement for the carrying on of that business has been fully executed, will be enforced. [Citations.] However, in the instant case the basic agreement has not been fully executed, as is evident from the fact that the primary question before this court is the enforcibility of that agreement.

It should be noted that in *Brower,* the covenant sought to be enforced was a covenant not to compete, but enforceability of the covenant by its express terms depended upon the continued existence of a partnership engaged in the operation of pinball machines, a felony. Relief was denied because the partnership agreement was not fully executed, so that the agreement sought to be enforced could not be severed from the illegal agreement.

the same as set out in the following quotation from *Teich v. Chicago*, 298 Ill. 498, 501, 131 N. E. 605, 606:

" ' . . . *In a case where such a party can show a right of recovery without relying on the illegal contract and without having the court sanction the same he may recover in any appropriate action. . . .*' (Italics ours.)"

The most recent consideration of the severability doctrine occurred in *Palmer v. Stevens-Norton, Inc.,* 75 Wn.2d 155, 156-59, 449 P.2d 689 (1969), where this question was presented:

Where a plaintiff has purchased from his own agent, a mortgage broker, two promissory notes and has simultaneously received from the broker a guaranty that the notes would be paid in accordance with their terms and the plaintiff sues upon the guaranty and not upon the notes, is the defense that the notes are usurious available to the guarantor?

. . .

The trial court concluded that appellants' guaranty was an independent agreement, not secondary or collateral to, or a part of, the loan transactions between Stevens-Norton, Inc. and Hendricks and Martin, and that the guaranty was a valid, enforceable contract. We agree with that determination.

. . . The guaranty was in no way, nor could it be, a benefit or accommodation to the debtors. The guaranty is independent of the usurious loans, is supported by consideration, and is therefore enforceable. [Citations.]

In applying the severability doctrine to the facts in the instant case, we look for satisfaction of the tests of remoteness announced in our cases: First, whether or not the contracts of assignment and warranty were separate and distinct from the antecedent illegal transactions between Lifetone and its customers. It is important to note that the only illegal transactions were transactions between Lifetone and its individual customers, and those transactions were illegal because the referral commission agreements were made at the same time. It is thus apparent that neither the assignments containing the warranties of enforceability nor the guarantee agreements sued upon are substantially identical

with the illegal transactions even though they are causally related. The warranties and guarantee agreements are therefore only collateral to the conditional sale contracts.

Secondly, an otherwise valid promise, though causally related, is sufficiently remote from the illegal transaction if it is supported by independent consideration. *Sherwood & Roberts-Yakima, Inc. v. Leach,* 67 Wn.2d 630, 409 P.2d 160 (1965), may be cited as authority for this proposition. The court, in *Leach,* recognized the doctrine that an agreement will be enforced when collaterally related to an illegal transaction, so long as there is an independent consideration or if the plaintiff does not require the aid of the illegal transaction to make out his case. In *Leach,* the oral promise of the contract-purchaser Leach to pay, regardless of the promises contained in the commission agreement, stood alone and without consideration, and so could not be enforced.[14] In the instant case, the consideration for the assignment and the warranties received by Sherwood & Roberts consisted solely of the cash received and was independent from and not related to the illegal promises made by Lifetone to its customers, and such illegal promises constituted no part of the consideration for the warranties. The consideration for the August 23, 1963, individual guarantee agreement was the promise to purchase Lifetone's contracts.

The third test requiring analysis is whether the warranty agreements sued upon are sufficiently remote, or collateral, or severable from the antecedent illegal transactions so that the enforcement of the agreements sued upon (the warranties) does not result in sanction of the original illegal contract, or conflict with the policy against enforcing illegal contracts. Appellant concedes, and properly so, that

---

[14]Appellants here, Sherwood & Roberts, contend that the underlying reason the court did not find independent consideration to support the contract in *Leach* was that the illegal promise, related to the referral selling commission agreement, was part of the consideration for Leach's written promise to pay. Therefore, the written promise to pay was part of the illegal promise, and therefore, not independent from the illegality. Consequently, there was no independent consideration.

one may not enter into a venture involving conduct which one knows, or suspects, to be illegal and attempt to shield himself from the consequences of the wrongful conduct by obtaining from another an agreement by which he will indemnify the other against the monetary consequences of the contemplated wrongdoing. To enforce such an agreement would be to sanction and promote the deliberate violation of the public policies included in the law. *Kansas City Operating Corp. v. Durwood,* 278 F.2d 354 (8th Cir. 1960). Here, it is conceded that both parties acted in good faith and without knowledge that Lifetone's contemplated referral selling program involved a violation of the law.[15]

In *Municipal Metallic Bed Mfg. Corp. v. Dobbs,* 253 N.Y. 313, 316, 171 N.E. 75, 68 A.L.R. 1376 (1930), the lessor warranted that the lessee could lawfully use the premises for its intended purposes. The court sustained the lessee's action for breach of this warranty. In holding that the lessee had justifiably relied on this warranty and had no intent to do an illegal act, the court said:

> A plaintiff cannot recover if he is compelled to predicate his cause of action on an illegal contract, and one may not indemnify another against the consequences of his illegal acts [citation], but the covenant or guaranty of indemnity sued on is not an illegal' contract and it may be enforced without any violation of law by the tenant. The fact that the lease may not be lawfully performed does not make the guaranty illegal. It stands on its own footing.
>
> . . .
>
> The lease contains an absolute and unequivocal guaranty that the manufacture of metal beds in the leased premises is not in violation of law and a promise that the landlords will indemnify the tenant against any loss sus-

---

[15]Indemnity contracts have been upheld in cases of unintentional wrongdoing, *i.e.,* tort situations. *Cope v. J. K. Campbell & Assoc., Ltd.,* 71 Wn.2d 453, 456, 429 P.2d 124 (1967), states:

> [W]e find no doctrine of public policy which renders unenforceable contracts to indemnify one against the loss sustained by reason of the other's negligence even though the party indemnified may, by his negligence, have contributed to cause the loss or injury.

tained by it as the result of the existence of any such restriction on the use of the premises.

Here, as in *Metallic Bed*, Sherwood & Roberts is not seeking to recover money paid on a transaction entered into for an illegal purpose, nor to be indemnified for a violation of the law. The warranties upon which Sherwood & Roberts base their suit are not illegal contracts, and they may be enforced without causing Lifetone to violate any law. The fact that Lifetone's referral selling program is illegal, and, that as a consequence, the assigned contracts are also illegal and unenforceable, does not make the warranties illegal if we can regard the warranties as being sufficiently divorced or severed from the related illegal contracts. Each assignment given by Lifetone contains an unequivocal warranty that the assigned contract is valid, genuine and enforceable and, therefore, not in violation of the law. Also, the Lifetone promoters, the individual respondents, guaranteed the accuracy of such warranties and promised to indemnify Sherwood & Roberts against any loss sustained by them as a result of breach of warranty made by their corporation, Lifetone. Neither party knew that single stage referral selling was illegal until the decision in *Leach* was filed. When the warranties were given by Lifetone in 1963, it was by no means clear that single stage referral selling was a lottery. Ignorance as to the legality of single stage referral selling was not unreasonable.[16] It was therefore entirely proper for Lifetone to assure the purchaser of its contracts that they were legal and enforceable contracts. There was no intent on the part of either party to violate the law, and the trial court so found.

We see no reason why Lifetone's warranty as to the legality of the contracts assigned should not be enforced, since enforcement causes no violation of the law but,

---

[16]*Sherwood & Roberts-Yakima, Inc. v. Leach*, 67 Wn.2d 630, 409 P.2d 160 (1965), was a case of first impression in the State of Washington. The Ohio attorney general had expressed an opinion that some types of referral selling involve a lottery. However, the appellate court of Ohio rejected this opinion. *DeWitt Motor Co. v. Bodnark*, 14 Ohio Op. 2d 25, 169 N.E.2d 660 (1960). See 42 Wash. L. Rev. 668 n.1.

rather, encourages compliance with the law. The court of appeals, in *Metallic Bed*, 253 N.Y. at 318, stated:

> The building may not be lawfully used for factory purposes and the lease may be illegal to that extent but it does not appear from the complaint and it cannot be inferred from the facts pleaded that it was the intent of the parties that the law should be violated. The contrary is the natural inference. The complaint looks to compliance with the law rather than noncompliance.

The trial court's finding that the parties dealt in good faith with no intent to violate the law lends support to a conclusion that the warranty as to legality is severable from the illegality of the transaction to which the warranty relates. If it were not so, the illegality of the underlying transaction in every case would taint the warranty and cause it to be unenforceable whenever it was breached. As in *Metallic Bed*, the fact that the conditional sale contract may not be lawfully performed does not make either the warranty or the guarantee agreements illegal. They stand on their own footing.

We hold that, on reviewing the totality of circumstances in the context of the doctrine of severability, the warranties and guarantee agreements sued upon are severable from the antecedent illegal transactions, and to enforce the warranties would neither sanction nor enforce the illegal transactions.

Lifetone contends that the trial court's conclusion "[t]hat the parties hereto were in pari delicto in their transactions with one another and the equipment purchasers" prevents a recovery by Sherwood & Roberts upon the warranties. We do not reach this issue, in view of our determination that the warranty agreements sued upon are severable from the antecedent illegal transactions, so that this suit is not based on an illegal contract or bargain.

The order of dismissal is vacated, and the cause remanded with directions to vacate that portion of finding 7 indicated herein to be erroneous and the conclusions of law inconsistent with this opinion. This cause is remanded to

the trial court for further proceedings not inconsistent with this opinion. Appellants shall recover their costs.

JAMES, C. J., and FARRIS, J., concur.

---

Petition for rehearing denied July 24, 1970.